BREAUX, C. J.
This is an action for damages against the defendants in the sum of $2,000 for the diminution in the value of a town lot in the city of Opelousas and the improvements thereon, and $250 for exemplary and punitive damages.
The property is owned hy plaintiff’s wife.
The community has never been dissolved between plaintiff and his wife.
Plaintiff’s complaint is in substance that the defendants have taken possession of the street on which the lot fronts, laid their tracks, and operated their cars thereon; that it is almost impossible to occupy the residence, and that he has remained therein because his limited means did not permit him to move to some other place; that the municipality had no authority to grant a franchise without submitting the matter to the property taxpayers; that defendants went beyond the authority granted; and that the street closed by them is not a public street.
He complains that the roadbed of defendant company’s track takes up the whole street in the front of his house, and the means of ingress and egress from' and to it.
His further complaint is that the family supplies, fuel and other necessary things, must be carried over the roadbed into the yard by hand; that carts and other vehicles cannot be driven to his place; that those who come to his dwelling place or go therefrom must use the railroad as a footway; that this footway is dangerous, particularly to his children attending school; that the drainage is Impaired and even destroyed; that the smoke and cinders add to the discomfort.
He sets out with particularity all the different annoyances to which he avers he is subjected.
The lot cost him $75 in the year 1896. He says that he has since built a dwelling house thereon and other improvements; planted trees and flowers. The evidence shows that the property has since increased in value.
He,states that others bought and improved lots on the street on which his wife’s property is, and that it has become a popular residence street of the city.
The defendants take issue with plaintiff, and urge that by the ordinance of the board of aldermen of Opelousas, January 27, 1907, they were granted the right to lay their track in the center of Cheney street; that the hoard had the authority to make the *575 grant; that Cheney street extended then, as it does now, from Lombard street on the east to the western limits of Opelousas; that the school board formerly owned the property of plaintiff, and also owned the streets, which it left open as a public way at the time that it sold lots along that street; that the acts of sale, including the act of sale to plaintiff by the board, referred to the lot sold as bounded on the north and south, as the case might be, by the extension or continuation of Cheney street. Defendants further urge that they complied with the law and made their grade in conformity with its requirement, and as they were obliged to do because of the grade of another road which they crossed in front of or near the front of plaintiff’s residence.
Defendants also urge estoppel, which grows out of the fact that plaintiff permitted the construction of their road under authority of the city ordinance without at all objecting; that plaintiff should have protected his rights by injunction; that they had the right to build their railroad on Cheney street; and that any damages, if any, are damnum absque injuria.
Exception:
By way df exception defendants plead that plaintiff was without authority to stand in judgment for his wife.
We hold: It. is true that actions relating to the dotal or paraphernal property of the wife or of some real right of hers must be brought by her authorized by her husband.
The learned counsel for the defendants assumed that the wife is suing for the recovery of the real right when such is not the case, but it is a suit to obtain judgment for damages to the property. There is no question of title or of ownership. They are charged with having.taken possession of a strip of ground in violation of petitioner’s right.
Neither the ownership nor the possession of the property of the plaintiff is involved. There is nothing in the nature of a petitory' action. The husband had the administration of her separate property and its control.
One, the real action, is the right in a thing. This action here is different, as the purpose is to recover a right on account of a thing.
We must decline to sustain the exception. It was properly overruled in the district court.
We pass to a consideration of the next issue involved. It relates to the franchise to pass through Cheney street which defendants obtained from the municipality.
We are not inclined to sustain the objection. But, of that, later.
We propose now to work out the value of the property — plaintiff’s home and that of his family.
On the way to this appraisement, it occurs to us that plaintiff’s property is well bounded, at least on two sides, and as a result egress and ingress is stopped in great part.
The testimony of plaintiff, given in his own behalf, clearly stated the nature of his complaint. We pass it, mainly for the reason that it sustains his allegations and in the main agrees with the witnesses called by him to prove value.
We include here the summary of their testimony.
T. McKinney is the first witness who testified. He is a building contractor since many years, fairly well informed, he says, as to the value of lands in Opelousas. He built the residence on plaintiff’s place about seven years ago, and gives its dimensions. It has rooms, hallway, and gallery. He estimates the value of the lumber, if the house was taken apart for the purpose of constructing some other building, at $300. He estimates the value of the house and lot, were there no railroad running near it ob- *577 strueting tire use oí Cheney street, at $3,500. As to the value now, he said it was quite low, almost worthless.
The next witness is A. C. Styles. He is a retail lumber dealer; has some idea, he said, of the value of property in the city. Has bought and sold vacant lots. Supposes that the property was worth about $3,500. He estimates the building material, if the building were taken apart, at three or four dollars per thousand; and at another time, whilst testifying, he fell as to value to two and three dollars per thousand. He adds, for residence the house was of no value, and that he did not know to what purpose it could be put in the condition in which it is now. He states that before the advent of the railroad the land in this street was spoken of for residence by a good class of people, some of whom bought property and improved it for that purpose.
A. C. Allen, wholesale grocery business, did not testify directly as to the value of property, but agreed with other witnesses that the value of the property had diminished considerably.
E. M. Boagni, the next witness — plaintiff in a similar suit against the defendant company — places the value of the property previous to the construction of the road through Cheney street at about $3,500, and since the construction of the road he assessed the value of the remaining property at between $700 and $800.
According to Boagni, the O. G. & N. E. Road has caused and causes damages to plaintiff’s property; extent of the damages not shown.
L. C. Soileau, as a witness, directed his attention to the damages, and said nothing about the value of the property at any time, except to say at the present time the property is valueless.
George W. Kelly, as a witness, gave an account of the direction and extensión, or proposed extension, of Cheney street, and he' also fixes the value of the property before-the defendants built their track through Cheney street at about the same amount as the. other witnesses.
He also states that the present value has' been greatly reduced by defendants’ constructions on the street.
He also owns property on the street, and is one of the little group that determined to sue the defendant company.
Rousseau Guidry, another witness who has some interest in the result, being an owner of land abutting on the street in question,' fixes the value of plaintiff’s land at between $2,200 and $3,000.
Danel, another witness, fixes the value at about $3,200 or $3,400.
A. C. Jones testified very much to the same effect as to the value of the property, and attempted to fix the extent of the damages caused by the road with many initials: O. G. & N. E. R. R. He said in positive terms that the damage caused by the defendant road was about 80 per cent., while the damages caused by the O. G. & N. B. R. R. is 20 per cent.
Having considered plaintiff’s testimony regarding value, we take up for consideration defendants’ testimony as relates to value:
R. Morningveg, from what motive does not fully appear, offered to plaintiff to make an exchange; to give to plaintiff twice as much of his land for each foot of plaintiff’s land.
In considering values, the testimony of this witness cannot have any great weight. It was a private matter between plaintiff and this witness, which has nothing to do with fixing value of the property. Whether plaintiff accepted the offer in the evening and declined it in the morning is something with which we are not concerned in fixing value.
J. G. Lawler, a real estate agent who has some experience in matter of values, is anoth-’ er of defendants’ witnesses. At one time he states, while testifying, that defendants*' construction caused diminution in the value' *579 of property at about 50 per cent. At another time be states that tbe present value is between $800 and $1,000. He states that tbe value of tbe property of plaintiff before tbe construction was about $2,200; 20 per cent, damages is said to have been caused by the road of many initials.
That does not seem to be seriously disputed.
T. <3. Obacere, another witness, testified in regard to limits. According to bim tbe space between tbe railroad embankment on Obeney street and tbe fence of plaintiff’s property measures about 8 feet 3 inches. That confirms tbe impression given by tbe photograph No. 2. There is enough space for a small sidewalk in front of plaintiff’s property.
It must be remembered, however, that tbe ditch will take up about 2 feet 5 inches of the edge, according to this witness.
Defendants also introduced, to prove value, extracts from tbe assessment rolls. They show that in tbe year 1906, before tbe road was constructed, tbe property was assessed at $500, and tbe same in amount was the assessment for tbe year 1907.
It was also shown by tbe defendants that property in Opelousas was assessed those years between one-third and one-half of its value.
In all this the elements of damages have been considered, such as diminished value of the property; tbe discomfort to persons, tbe noise, and other similar elements of damages have not been considered.
Extent of' defendants’ rights under ordinance:
We are of opinion in tbe first place that the municipality had authority to grant a franchise; to what extent and how it should be exercised present questions that are not at issue.
Wé entertain the opinion stated (as to the authority of the municipality) because Act-No. 136, p. 224, of 1898 delegates power to municipalities to grant franchises without submitting the question to the vote of the property taxpayers of the city.
This act in terms refers to railroads, and amends and changes Act No. 79, p. 113, of 1896. The first law repeals the latter, and it follows that the franchise could be granted without submitting the question to the taxpayers. Conceding that it does not, the railroad certainly built on the street in good faith. It has been in possession for over a year. No one ever objected to its construction and to its possession.
This does not exempt the road from all actual damages it has committed or may commit, for the grant of the franchise did not have the effect of authorizing it to commit actual damages, but it certainly relieved it from liability for exemplary damages.
And lastly, upon this point, plaintiff’s further contention is that the defendants are trespassers upon this street by reason of the fact, as he contends, that Cheney street was not a public street.
The plaintiff’s wife bought her lot with that street as one of its boundaries. In extending Opelousas in that direction, it was considered as one of its public streets. The school board also (the vendor to plaintiffs) reserved that street not only for plaintiff’s use, but, as we take it, for the public use.
In plaintiff’s petition, there are allegations which confirm the claim that Cheney street is a public street, regularly dedicated to public use.
This leaves plaintiff without a good claim for exemplary damages as the street is public.
Plaintiff also contends that even if the municipality was authorized, and even though the municipality did in one of its ordinances grant authority to the road to take up a part of Cheney street, it did not authorize the road to take up the whole of Cheney .street.
*581 We have already stated that we do not consider the foregoing as presenting under the pleading an issue in the case. Besides, the .silent acquiescence of all concerned renders it not possible to raise the issue.
We must therefore differ from the view •taken by plaintiff. The municipality had the right (subject to the penalty, if the defendant road committed damages by diminishing the value of the property) to actual damages.
Although we gave consideration in the first •place to damages, we left it to consider other issues raised, and we now return to the question of damages for the purpose of fixing the amount which will be allowed.
Taking the mean of the different amounts •of the testimony of plaintiff’s witnesses, we find that it is thirty-two hundred and forty-five dollars and forty-six cents ($3,245.46), value of the property before the road was •constructed.
Adding this to the highest and lowest estimate of defendants’ witnesses in regard to value, $3,245.46, $2,200 — total, $5,445.46.
Taking the mean between plaintiff and defendants as to diminution, we find that 65 -per cent, was the percentage of diminution; •or taking the estimate of the defendant that the diminution was in the proportion (the mean is here taken) of $800, $900, or $1,000, to $2,200, and adopting the mean $900 testified to by defendants’ witness, we have fourteen hundred and fifty-eight dollars ($1,458).
As relates to 20 per cent, damages by other road or roads, two of the witnesses (one in positive terms) testified that it was about •20 per cent. The counsel for plaintiff in his. calculation as to amount followed it, and the Judge of the district court gave it effect in his judgment. We also give it effect in arriving at the conclusion above expressed; -that is, in allowing the $1,458, amount of ■judgment.
It is therefore ordered, adjudged, and decreed that the judgment be amended by in-: ..creasing the amount to $1,458.10, with 5 per! cent, interest on the amount of $1,000 from the date of the judgment in the district court, and 5 per cent, interest on the balance from the date of this judgment. Costs of both courts to be paid by defendants and ap-pellees.