(48 South. 205.)

No. 17,222.

FONTENOT v. COLORADO SOUTHERN, N. O. & P. R. CO. et al.

(Jan. 4, 1909.)

RAILROADS (§ 114*)—USE OF STREET—RIGHTS OF ABUTTING OWNER—DAMAGES.

Defendant company was by the council of the city of Opelousas granted the privilege of running its trains through a certain street in that city. Under that permission it threw up an embankment, which obstructed the street and greatly affected the values of the properties abutting thereon. The plaintiff, instead of opposing the constructions as made, under article 856 et seq., of the Revised Civil Code, acquiesced in the same and sought to recover damages from the company. Judgment having been rendered against it, it has appealed, claiming that the amount awarded is too large. The judgment appealed from is affirmed. Exemplary damages are disallowed. Lewis v. Colorado Southern & New Orleans R. R. Co., 47 South. 906, ante, p. 572.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 351, 370; Dec. Dig. § 114.*]

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, parish of St. Landry; Edward Taylor Lewis, Judge.

Action by Delphine Fontenot, for herself and minor children, against the Colorado Southern, New Orleans & Pacific Railroad Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Miller, Dufour & Dufour, Henry Mooney, and Dudley Louis Guilbeau, for appellants. Robert Lee Garland and Lewis & Lewis, for appellee.

## Statement of the Case.

NICHOLLS, J. The plaintiff alleged: That she owned personally, and also in indivision with the minor children, on whose behalf she sued, a lot of ground situated on Cheney street in the city of Opelousas (which she described), she owning one undivided half, and the said minor children the other undivided half, having thereon a dwelling house erected as a family residence and occupied as such about eight years, and which was occupied by herself and family up to the time of her marriage with her present husband. That the said dwelling house and a barn and other out buildings were well built, of good material, and at a considerable expenditure of money. That said location was chosen by her deceased husband as an eligible spot for a residence, being perfectly well drained from its proximity to the Tesson gully, and being upon a side street near the center of town, and at the same time away from the commercial avenues and much-used highways of the town. .

That the only avenue of ingress and egress to and from the residence and lot of ground was over and through Cheney street; the said lot of ground being bounded upon the front by said Cheney street, and on the three remaining sides by the property of adjoining proprietors.

That some time in the month of December, 1906, the Colorado Southern, New Orleans & Pacific Railroad Company, acting under color of authority granted to it by the board of aldermen of the city of Opelousas, took exclusive possession of Cheney street, and constructed thereon an embankment as a part of its transcontinental system to the city of New Orleans.

That Cheney street, in front of petitioner's property has been so entirely monopolized by said railroad company as to effectually shut out of the premises and bar all approach to it, or from it, of wheel vehicles of any description, for the purpose of delivering on the premises groceries, fuel, or other material, or household necessities of any kind, and so far as to preclude the use of carriage or buggy or horses by occupants of the premises; that the shutting off the premises is rendered more complete and effectual by the railroad bed in front of the lot, which ranges in height from six to nine feet, and by a high and close plank fence on the opposite side from one end of the square to the other.

That the lot of ground in question has no commercial value, and was only valuable for residential purposes, and that while its value has been considerably augmented by the general rise in value of properties of that description, owing to the prosperity which has prevailed in the country for several years past, and owing to the construction of the Opelousas, Gulf & Northeastern Railroad through the northern portion of the city of Opelousas, yet all the increase of value given to the property from those sources has been more than destroyed by the construction of the defendant company's road over Cheney street and the destruction of that street as a highway.

That the property in question, in addition to the cause of damage above set forth, has been lessened materially in rental and salable value by the proximity of the residence to the defendant company's track, the continuous noise from the passing of trains, freight and passenger, which will soon take place, by the nuisance from smoke, falling cinders, and soot, by danger of fire from sparks from the locomotive engines, by the puffing of escaping steam and the shaking and trembling of the ground necessarily incident to the frequent passing of trains, and by the constant danger to life and limb of the children and family of persons who may occupy the residence. It is further represented: That the loss of value of the property, and the consequent damage to the owners by the defendant company, as set forth above, amounts very nearly to the full value of the property, and in the sum at least of $2,500.

That the defendant company, in taking possession of said street and in constructing its road thereon, was not acting in pursuance of any legal right, but was acting under color of an ordinance hastily granted by the board of aldermen of the city of Opelousas, on the 27th day of January, 1906, at a special meeting held on the same day that the call for the same was issued, and under circumstances which precluded the opportunity for considering and adopting measures for the preservation of Cheney street as a thoroughfare, and for the protection of the interest of the public. And, furthermore, the said ordinance was passed without having previously taken the sense of the voters of the city, at an election held for that purpose, whether a right of way should be granted to the defendant company over Cheney street, as required by Act No. 79, p. 113, of 1896, of the Legislature of the state of Louisiana, requiring such election to be held; and the ordinance of the board of aldermen in question is illegal, null, and void for that reason. Said ordinance is illegal for the further reason that, inasmuch as Cheney street has a width of only 40 feet, the construction of the defendant company's railroad and the maintenance and operation thereon of its passenger and freight service necessarily implied the exclusive use and monopolization of said street, and its complete destruction as a public highway, a consequence which must have been known to the defendant company's officials at the time of granting said franchise. It was therefore averred that plaintiffs had the right to recover by this action, not only the damages directly caused them, but any remote or consequential damages, as also exemplary damages.

In view of the premises petitioner prayed that said defendant railroad company be cited to answer this petition through its proper officer; that the city of Opelousas be also cited, in order that it may appear herein and represent its interests, if any it has, in this litigation. She also prays for judgment against the said Colorado Southern, New Orleans & Pacific Railroad Company in the sum of $2,500 as actual damages and $250 as exemplary damages, and condemning said company to pay said sums in the proportion of one-half for your petitioner, Delphine Fonte-

not, and one-half for the aforesaid minor children. And she prayed for costs and for general relief in the premises.

Defendant excepted that the petition was too vague, indefinite, and insufficient to permit of defendant safely and intelligently answering thereto. It prayed that plaintiff's suit be dismissed. The court overruled the exception. Defendant, under reservation of the exception, answered, pleading a general denial. Further answering, it averred that by ordinance adopted by the mayor and board of aldermen of the city of Opelousas on January 20, 1906, it was granted the right to lay its main track in the center of Cheney street; that the board of aldermen aforesaid had full authority under the charter of said city, being Act No. 136, p. 224 of 1898, to grant this right. As to the embankment in front of plaintiff's property, respondent showed that the physical condition of the ground at this point made the same absolutely necessary, and that it had not taken exclusive possession of said street in the sense prohibited by law. In conclusion, respondent company declared that it was legally in Cheney street; that the construction of its roadbed was done in a scientific and workmanlike and legal manner; that its trains are being operated in the like manner; and that any damages plaintiff may suffer aside from such damage as was alleged to be occasioned by the railroad embankment, and here denied, are "damages absque injuria."

In view of the premises, respondent company prayed that plaintiff's damages may be rejected, her suit dismissed, with costs, and for general relief.

The district court rendered judgment in favor of the plaintiff and for her minor children, and against the defendant, for the sum of $2,000 as actual damages, with legal interest thereon from the date of the judgment until paid.

It rejected and disallowed plaintiff's prayer to be awarded punitory damages. Defend-

ant appealed, and plaintiff has answered the appeal, praying that the judgment be increased by allowing them $250 as punitory damages.

## Opinion.

The issues raised by the plaintiffs in the matter before us are identical with those submitted to and recently decided by this court in Lewis against the same defendant corporation. William B. Lewis v. Colorado Southern, New Orleans & Pacific R. R. Co. et. al. (not yet officially reported) 47 South. 906.[1] The present case differs from that referred to only in respect to the quantum of damages which resulted to the owners of the two different properties from the action taken by the defendant.

The present plaintiffs (as did Lewis in his case) acquiesced in the fact itself of the taking possession by the defendant company of the street in front of their property under an ordinance of the city council. They did not oppose the construction of the road under article 856 et seq. of the Revised Civil Code, nor do they claim now the right of having the constructions made by the defendant in the street removed (Rev. Civ. Code, arts. 861 et seq. 868).

Accepting the present situation, the only relief which they ask is that they be awarded damages arising from and out of that situation.

The damages claimed looked to a permanent occupancy by the railroad company of the street and rest on that fact as a basis. In addition to compensatory damages, plaintiffs pray that exemplary damages be awarded them for the course taken by the defendant. The same character of damages were claimed against defendant by Lewis in his suit; but his demand quoad those damages was disallowed. As the claim for exemplary damages herein is predicated upon action taken by the defendant under the

[1] Ante, p. 572.

same circumstances as that which was taken in reference to the property of Lewis, the same ruling should be made to govern and control the rights and obligations of the parties to the present action. The only remaining question, therefore, to be passed upon by the court, is the amount of compensatory damages to which plaintiffs are entitled.

The trial court fixed plaintiffs' damages at, and rendered judgment in their favor for, $2,000. Defendant contends they did not exceed $1,326. Counsel for defendant urges that the district court gave too much weight to the testimony of plaintiffs' witnesses, who were also claiming damages from defendant for damages to their properties by reason of the construction of its road on Cheney street. He insists that, in view of that interest, this court, in reaching its conclusion, should disregard their testimony altogether. That we cannot do. The witnesses were all competent and legal witnesses. The fact of interest affected only their credit and the weight to be given to their testimony. We must assume that the district judge, who knew the witnesses, dealt with it with discretion and good judgment. Trial judges, who know witnesses, and who are doubtless familiar with local conditions, are in much better position to judge correctly, where conclusions must almost necessarily rest upon opinion testimony, than is an appellate court.

We do not find in this record ground for a reversal of the judgment appealed from. It is therefore affirmed.