O’NIELL, J.
The defendant has appealed from a judgment annulling a municipal ordinance repealing a prior ordinance whereby the city had granted to the railroad company a right of way for a switch track over certain streets and on the waterworks property of the municipality.
The town of Crowley was incorporated in 1894 by the adoption of a charter by the inhabitants according to the provisions of Act No. 49 of 1882, p. CO. Among the .provisions of the charter, the municipality was authorized to acquire and own property of any kind, and to sell, lease, farm out, -or otherwise dispose of the same. A paragraph referring to streets gave the municipality authority to authorize the use of the streets for either steam or electric railroads or horse cars, and to regulate the same.
In October, 1S97, the municipality bought a site for a waterworks and electric light plant, consisting of a tract of land 200 feet square, adjoining the right of way of the plaintiff’s main line of railroad running through the town; the tract being bounded on the north or northwest side by the railroad right of way, on the east or northeast by the remaining part of the city block extending to Avenue I, on the south or southeast by Mill street, and on the west or southwest by Avenue H.
It was recited in the deed of conveyance that the land was bought for municipal purposes, and particularly to provide the municipality with a site for a power house for its contemplated system of waterworks and electric lights.
On the 10th of December, 1897, the town council adopted an ordinance granting to the Louisiana Western Railroad Company and its assigns the right to construct and operate and maintain a switch track on the south side of its main line of railroad, extending across the Avenues I and J, and across the waterworks property, and extending thence into aDd along Mill street. The grant was declared to be in accord with a plat that was on file in the office of the mayor of the town.
The switch track was constructed by the railroad company soon after the ordinance was enacted, and it has ever since handled the tonnage of five or more important industrial plants, factories, and mills in the town along the route of the switch track.
The town of Crowley, having grown to the proportions of a city, in July, 1899, adopted the provisions of the general statute governing municipal corporations, the Act No. 136 of 1S9S.
On the 3d of September, 1913, the mayor and board of aldermen of the city of Crow *643 ley, desiring to construct a reservoir on tlie waterworks property, adopted an ordinance repealing the ordinance dated tlie lOtli of December, 1897, and ordering the railroad company to remove its switch track from the property of the municipality within 30 days.
The railroad company then brought this suit to have the ordinance dated the 3d of September, 1913, decreed unconstitutional, null and void; to have the original ordinance, dated the 10th of December, 1897, recognized as a grant to the plaintiff of the perpetual use and enjoyment of the franchise to maintain and operate the switch track on the streets and property of the city; and to enjoin the municipal authorities perpetually from interfering with the plaintiff’s possession and use of the franchise. The plaintiff prayed for and obtained a writ of injunction preventing the municipality from enforcing the ordinance dated the 3d of September, 1913, or from interfering with the plaintiff’s possession or use of the franchise pendente lite.
The claim of the plaintiff is that the granting and acceptance of the franchise and the construction of the switch track in pursuance thereof and at great expense to the grantee constituted a contract between the municipality and the railroad company, and vested in the latter a right of property that could not be revoked at the will of the grantor or without the consent of the grantee. The plaintiff alleged, therefore, that the ordinance dated the 3d of September, 1913, was an attempt on the part of the municipal authorities to violate the fifth and the fourteenth articles of amendment of the Constitution of the United States and the second and 166th articles of the Constitution of this state.
The answer of the defendant is, in effect, that the grant was only temporary, intended to last only so long as the municipality did not need that part of the waterworks property occupied by the plaintiff’s switch track, and revocable at the will of the grantor; that the reason for revoking the grant was that the municipality in 1913 found it necessary to use the space occupied by the switch track for the construction of a reservoir; and that, if the original grant was intended to be perpetual or binding upon subsequent governing authorities of the municipality, it was ultra vires, null and void, and particularly that it was made in violation of Act No. 79 of 1896, p. 113.
The judgment rendered declared the ordinance dated the 3d of September, 1913, unconstitutional, null and void; recognized the ordinance dated the 10th of December, 1S97, to be a periietual grant of a franchise to the plaintiff to mainfain and operate its switch track on the streets and waterworks property, not revocable without the consent of the railroad company; and perpetually enjoined the municipal authorities from interfering with the railroad company’s possession and enjoyment of the franchise.
Opinion.
[1] The principal reason why the defendant contends that the grant in contest was ultra vires is that it was not approved by a majority of the property tax payers voting at an election called for that purpose. No such election was ever called, notwithstanding Act No. 79 of 1896, in force at the time the grant was made, provides:
“That the cities and towns of this state (having a population of less than 25,000 persons) shall have authority to grant to railroads and other corporations the right to use and occupy the streets and alleys therein and to obstruct same, or part thereof, with buildings necessary to and used by said corporations: Provided that prior to said grant a majority of the property tax payers in said city or town voting at an election to be called for such purpose shall approve said proposed grant: Provided further that, in making said grant, the said cities and towns through their councils shall impose such conditions and make such charges as they may deem fit.”
*645 Crowley, being only a town in 1897, had then, and has yet, for that matter, a population far below 25,000.
Before the passage of the Act No. • 79. of. 1896, the law on the subject was contained in section CS9 of the Revised Statutes, which declared that no railroad, plank road, canal, or works of drainage, sewerage, or land reclamation should be constructed through the streets of any incorporated city or town without the consent of the municipal council thereof.
The learned counsel for the railroad company call our attention to the fact that the Act No. 79 of 18961 does not contain a repealing clause. And they contend that the statute did not deprive the municipal council of the town of Crowley of authority to grant-to a railroad company the right to construct and maintain tracks on the streets of the town, without the approval of the property tax payers, because that town was governed by a special charter that could not be repealed or amended by implication by a general law.
Our opinion, however, is that the doctrine that the repeal or amendment of a special statute does not ipso facto result from the enactment of a general law on the same sub; ject has no application whatever to this case, because the town of Crowley was not governed by a special statute or legislative charter. The corporation and its officers were governed by a charter adopted by the inhabitants of the town, pursuant to a general law providing for the adoption of municipal charters (Act No. 49 of 1882, p. 60). Surely the officers of the municipal corporation;" their functions and authority, were governed and controlled by general laws enacted either before or after the municipal charter was adopted.
It is contended by the learned counsel for the plaintiff, appellee, that the'phraseology and punctuation, or rather the lack of punctuation, in the statute of 1896, is such that it does not require the approval of a majority of the property tax payers of a town or city to authorize the municipal council to grant an easement or servitude for a railroad track on the streets of the town or city, but requires the approval by a majority of the property tax payers only when the purpose is to grant the right to obstruct the streets with buildings. That impresses us as a very strained and unreasonable interpretation of the law. It might as w'ell be contended that the approval of a majority of the property tax. payers id not necessary to authorize a railroad company to use or obstruct a street or an alley, but that such approval is required only when the purpose is to use or obstruct both “streets and alleys.”
AATien we consider that, before the enactment of the statute of 1896, the law authorized municipal councils-to allow railroad companies to use the streets of towns and cities, without consulting the property tax payers, that statute, declaring that municipal councils may grant the use of the streets for railroad tracks, provided a majority of the property tax payers approve the grant, is not entitled to any other construction or interpretation than that municipal councils were thereby forbidden to grant railroad companies the right to use the streets for railroad tracks without the approval of a majority of the property tax payers voting at an election called for that purpose.
The learned counsel for the plaintiff, appellee, maintain that the judgment appealed from is supported by the decisions of this court in East Louisiana Railroad Co. v. City of New Orleans, 46 La. Ann. 526, 15 South. 157; City of Alexandria v. Morgan’s La. & T. R. & S. Co., 109 La. 50, 33 South. 65; Capdevielle, Mayor, v. New Orleans & S. F. R. Co., 110 La. 904, 34 South. 868; by the decision of the Supreme Court of the United States in Grand Trunk Western Railway Company v. *647 City of South Bend, 227 U. S. 544, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405; and a decision by the Supreme Court of West Virginia in Clarksburg Electric Light Co. v. City of Clarksburg, 47 W. Va. 739, 35 S. E. 994, 50 L. R. A. 142.
The case of the East Louisiana Railroad Co. v. City of New Orleans was decided in 1894; hence the decision cannot aid in an interpretation of the statute of 1896., The only point decided was that section 4 of Act No. 135 of 1888, p. 193 (a special and local law referring only to - the city of New Orleans), declaring that the city council should not have power to grant a street railroad franchise except after at least three months’ publication of the terms and specifications of the franchise and after the same had been adjudicated to the highest bidder by the comptroller, had no application to the grant of a franchise to a steam railroad extending beyond the city limits. The decision has no application here.
City of Alexandria v. Morgan’s La. & T. R. & S. Co. was a suit to declare the forfeiture and annulment of a franchise for a violation of, or noncompliance with, the terms and conditions on which the franchise was granted. The court took occasion to say, at the outset of the opinion, that the municipality did not question the authority of its council to grant the franchise. We refer to page 54 of ■the report in 109 La. (33 South. 67). The decision therefore has no application whatever to the present controversy.
The decision in Capdevielle, Mayor, v. New Orleans & S. F. R. Co. seems to rest upon the' fact or theory that in that particular case the franchise was to inure to the benefit of the municipality. Neither are the facts nor the logic of the decision appropriate to the present controversy.
[2] In Grand Trunk W. R. Co. v. South Bend the demurrer of the defendant municipality admitted that its ordinance granting to the railway company a double-track fran-' chise on Division street was a valid grant made under legislative authority, but contended that the general police power of the municipality was sufficient-authority for revoking the grant at the will of the grantor. The doctrine of the decision is that rights acquired by a railway company under a valid municipal ordinance conferring trackage rights in the city streets, though subject to the power of the municipality to pass reasonable police regulations, are protected by the contract clause of the federal Constitution from destruction by a subsequent repeal. But the doctrine is limited to rights acquired under a valid ordinance, and therefore has no application to a case in which the validity of the ordinance is the question at issue.
Clarksburg Electric Light Co. v. City of Clarksburg is authority for the doctrine merely that, under the general statute law of West Virginia governing cities and towns, a grant by a municipal corporation of the. privilege, not exclusive, of occupying its streets for the conveyance of electricity for public use therein, confers a valid franchise, and is a contract protected by the provisions in the state and federal Constitutions prohibiting the passage of any law impairing the obligations of contracts. The learned counsel for the plaintiff, appellee, in the case before us, say that in the editorial notes to the decision last referred to many decisions are cited, maintaining that a franchise or privilege to use the streets of a city or town for any quasi public purpose is irrevocable unless the right to revoke is clearly reserved in the ordinance granting the franchise. But the decisions referred to maintain only the doctrine announced by the editor that a valid ordinance or resolution of a municipal corporation granting the right to lay railway tracks in a street of the municipality, when accepted and acted upon by the grantee, constitutes an irrevocable contract. That does *649 not aid in determining whether the ordinance’ which the plaintiff contends was irrevocable was a valid ordinance.
The district judge has not given us the benefit of his reason or reasons for maintaining that the town council of Crowley in 1S97 did not need the approval of a majority of the property tax payers of the municipality to authorize the grant to the railroad company of a perpetual servitude or easement on the streets of the town, except' that his honor considered the law and the evidence to be in favor of the plaintiff and against the defendant.
Our opinion, on the contrary, is that the Act No. 79 of 1S98 forbade the town council of Crowley to make an irrevocable grant of the use or occupancy of the streets of the town for a railroad track, without the approval of a majority of the property tax payers voting at an election held for that purpose. The ordinance passed on the 10th of December, 1S97, purporting to grant to the railroad company the right to use and occupy the streets of the town with a railroad track, without the approval of a majority of the property tax payers, was not a valid ordinance, or binding upon subsequent governing authorities of the municipality.
No legal authority has been shown, and we know of none, for the grant to the railroad company of the right to use and occupy with its tracks the land of the municipality that was dedicated, in the act of purchase, to the municipal purpose of an electric light and waterworks plant. Surely the general charter power of the corporation to acquire and own property of any kind, and to sell, lease, farm out, or otherwise dispose óf the same, did not authorize the municipal council to dispose of the municipality’s property, or incumber the same, without consideration, or as the council might see fit. Artiele 56 of the Constitution of 1879, then in force, provided (and the same provision was retained in article 58 of the Constitution of 1898 and in that of 1913) that the property of the state or of any political corporation thereof should not be loaned, pledged, or granted to or for any person or persons, association, or corporation, public or private. That constitutional provision, of course, has its limitations; but it is certainly applicable to the grant in contest; for which no obli.gation was incurred by the grantee, no consideration paid, and none contemplated, except perhaps the facility and convenience it might afford to the private corporations and individuals who would receive or ship freight over the railroad switch.
There is evidence in the record to the effect that an enforcement of the ordinance dated the 3d of September, 1913, requiring the railroad company to remove its switch track, will cause great loss and inconvenience to the commercial interests of the city of Crowley, as well as to the plaintiff; and there is testimony to the effect that the city might construct its contemplated reservoir so that it would not be necessary to remove the railroad tracks. But such evidence is relevant only to political questions which the governing authorities of the city of Crowley must determine, not to any question that we are called upon to decide.
The judgment appealed from is annulled and reversed; and it is now ordered, adjudged, and decreed that the plaintiff’s demands be and they are rejected, and that its suit he and it is dismissed at its cost in both courts, reserving whatever right of action the defendant has or may have for damages caused, if any were caused, by the writ of injunction.
MONROE, C. J., takes no part.