(III So. 177)

No. 28267.

## WACHSEN v. COMMISSION COUNCIL OF LAKE CHARLES et al.

### In re WACHSEN.

(Nov. 2, 1926.   Rehearing Denied Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. Certiorari ⬤⟿7—Injunction ⬤⟿137(1)—Devolutive appeal does not bar right to certiorari and order for temporary injunction against ordinance, void because ultra vires.

Only effective remedy available, in case ordinance granting railroad right of way over certain streets is illegal because ultra vires, being to invoke supervisory jurisdiction of Supreme Court under writ of certiorari, and to obtain order for temporary injunction, such relief may be granted, notwithstanding taking of devolutive appeal.

2. Evidence ⬤⟿29—Courts take judicial notice of public laws of state.

In suit to restrain passage of ordinance because ultra vires, setting out of legal corporate organization of municipality *held* unnecessary; courts taking judicial notice of public laws of state.

3. Municipal corporations ⬤⟿46—Municipality, incorporated under special act, with subsequent amendment of charter under Lawrason Municipal Corporation Act, held incorporated by special act (Act No. 79 of 1867; Lawrason Municipal Corporation Act, § 43).

Municipality, incorporated under Act No. 79 of 1867, with subsequent amendment of charter under Lawrason Municipal Corporation Act (Act No. 136 of 1898, § 43), *held* incorporated under special act, and not to come within the provisions of the Lawrason Municipal Corporation Act.

4. Municipal corporations ⬤⟿108—Municipality, incorporated by special act, held not affected by amendment to general act, relating to granting franchises without referendum (Act No. 79 of 1867; Lawrason Municipal Corporation Act, §§ 15, 43; Act No. 114 of 1916; Act No. 76 of 1914).

Municipality, incorporated under Act No. 79 of 1867, with subsequent amendment to its charter under Lawrason Municipal Corporation Act (Act No. 136 of 1898, § 43), being incorporated by special act, is not affected by amendment to Lawrason Municipal Corporation Act, § 15, by Act No. 114 of 1916, in so far as relating to granting of franchises without referendum, since Act No. 76 of 1914, amending the original Lawrason Municipal Corporation Act so as to require referendum vote approving franchise ordinances, was not repealed.

5. Statutes ⬤⟿158—Repeal by implication is not favored.

Repeal of laws by implication is not favored.

6. Statutes ⬤⟿166—Recopying franchise paragraphs into later act left such paragraphs intact, and as amended, in absence of express repeal of amendment (Lawrason Municipal Corporation Act, § 15; Act No. 114 of 1916; Act No. 76 of 1914).

A mere recopying of franchise paragraphs of section 15 of Lawrason Municipal Corporation Act (Act No. 136 of 1898) into the later Act No. 114 of 1916, still left such franchise paragraphs intact, and as amended by Act No. 76 of 1914, in absence of express repeal of that act.

7. Municipal corporations ⬤⟿108—Law authorizing granting of franchise by municipalities without referendum vote held repealed (Act No. 76 of 1914; Act No. 111 of 1912, § 15, pars. 6, 7, 8).

Act No. 76 of 1914, being a limitation and restriction on powers of municipal bodies in granting franchises, necessarily repeals Act No. 111 of 1912, § 15, pars. 6, 7, 8, in so far as grants are permitted to be made without referendum vote.

8. Municipal corporations ⬤⟿108—Ordinance granting railroad right of way for spur track must be submitted to vote of taxpayers (Act No. 79 of 1867; Lawrason Municipal Corporation Act, § 43; Act No. 76 of 1914).

Special charter of municipality, originally incorporated under Act No. 79 of 1867, with subsequent amendment under Lawrason Municipal Corporation Act (Act No. 136 of 1898, § 43), is controlled by Act No. 76 of 1914, requiring that franchise ordinance granting right of way for railroad industrial spur track must be submitted to, and approved by, vote of property taxpayers.

9. Injunction ⬤⟿21—Plea of prematurity to action to restrain city council from acting ultra vires held properly overruled.

Plea of prematurity of action to restrain city commission council from granting right of way for railroad industrial spur track *held*

properly overruled, since contemplated act, if consummated, would be wholly ultra vires.

**10. Injunction ⟨=77(1)—Injunction will lie to control discretion of city council, where it has no legislative authority or power.**

Discretion of city council cannot be controlled in relation to power and authority, conferred by law to do legislative act, but injunction will lie when there is no legislative authority or power.

Overton and Rogers, JJ., dissenting.

Application by Arthur G. Wachsen for a temporary injunction to restrain the Commission Council of Lake Charles from passing a certain ordinance. Judgment denying the application, and relator appeals, and subsequently serves notice on Hon. Jere Cline, one of the Judges of the Fourteenth Judicial District Court, Parish of Calcasieu, of intention to apply for certiorari and mandamus. Judgment set aside, and preliminary injunction ordered.

Cullen R. Liskow, of Lake Charles, and Hudson, Potts, Bernstein & Sholars, of Monroe, for relator.

A. O. King, City Atty., of Lake Charles (Brumby & Bauer, of Franklin, of counsel), for respondents.

LAND, J. An ordinance was introduced in the commission council of the city of Lake Charles granting to the Louisiana Western Railroad Company, without submission to a vote of the property taxpayers, a right of way for an industrial spur track over Front, Broad, Pujo, and North Court streets, with the privilege of constructing, maintaining, and operating said industrial track for a period of 25 years from date of the ordinance. Relator, who is a resident, qualified elector, and property taxpayer, of the city of Lake Charles, and the owner of real property on Front street, applied to respondent judge for a temporary injunction restraining the commission council from passing the ordinance in question, and from entering into or making such contract with the railroad company, on the ground that said ordinance is ultra vires, because in violation of Act 79 of 1896 and of Act 76 of 1914, which prohibit grants to railroads and other corporations of the right to use and occupy streets, except under prior approval of a majority of the property taxpayers in a city or town voting at an election to be called for such purpose; Act 79 of 1896 applying to cities and towns of less than 25,000 inhabitants, and Act 76 of 1914 to cities and towns of less than 75,000 inhabitants.

Relator avers in his petition filed in the lower court that the railroad company had made all preliminary plans and arrangements for the immediate use and occupancy of these streets with its industrial spur track, and that a majority of the members of the commission council, naming them, had publicly and privately announced their intention to vote for the passage of said ordinance at its meeting on September 7, 1926, or within the next few days, unless restrained from doing so by the district court of Calcasieu parish.

Relator further avers that the final passage of said ordinance by the municipal council, and the user of the rights and franchises by the railroad company, therein sought to be conferred, would operate to the great and irreparable loss, injury, and damage of relator and his property, as well as that of other residents, citizens, and property taxpayers of the city of Lake Charles.

Exceptions of prematurity to the jurisdiction of the court, and of no right or cause of action tendered by the commission council, were overruled; but the amendment to paragraph 5 of relator's petition, which had been made and allowed prior to the trial of the rule nisi, was stricken out; this amendment being to the effect "that the city of Lake Charles has, and had at the time of filing this suit, a population of less than 75,000 and in excess of 10,000."

Respondent judge, in passing upon the merits of the case, held that Act 76 of 1914 was repealed by Act 114 of 1916 amending section 15 of Act 136 of 1898, the Lawrason Municipal Corporation Act; and in so holding followed the Lewis Case, 122 La. 575, 47 So. 906, to the effect that Act 136 of 1898 had repealed Act 79 of 1896, and also the Mandeville Case, 139 La. 286, 71 So. 512, in which it is held that Act 76 of 1914 constitutes an enlargement, rather than a restriction, of the powers of municipalities, and, therefore, does not in any event affect the right of the governing body to make certain grants without a vote of the citizens.

For these reasons respondent judge declined to follow the more recent decisions of this court (the Crowley Case, 142 La. 640, 77 So. 486, and Connell v. Commission Council of the City of Baton Rouge [on rehearing] 153 La. 793, 96 So. 657), in which it is held that Act 79 of 1896 and Act 76 of 1914, requiring vote of taxpayers as condition of grants to railroads and other corporations to occupy streets, repeal all prior special laws in conflict therewith, so far as they authorize such grants without referendum.

Relator's application for a temporary injunction was therefore refused, and, after taking a devolutive appeal, notice was given by relator to respondent judge of his intention to apply to this court for a writ of certiorari, and also for a writ of mandamus to compel the issuance of the injunction.

[1] 1. Apparently the devolutive appeal taken by relator affords no adequate relief, as the commission council of the city of Lake Charles in the meantime is left free to pass the ordinance which is sought to be enjoined in this case.

If the ordinance in question is illegal and void, because ultra vires, as contended by relator, the only effective remedy left to him is to invoke the supervisory jurisdiction of this court under a writ of certiorari, and to obtain here an order for a temporary injunction, and the defendant may be granted such relief, regardless of the devolutive appeal. Hofman-Olsen, Inc., v. Northern Lumber Mfg. Co., 160 La. 848, 107 So. 593.

[2] 2. The courts take judicial notice of the public laws of the state, and therefore there was no necessity for setting up in relator's petition filed in the lower court the legal corporate organization of the municipality of Lake Charles. State v. O'Conner, 13 La. Ann. 486; Doss v. Board of Commissioners, 117 La. 450, 41 So. 720; Burke v. New Orleans Railroad & Light Co., 133 La. 369, 63 So. 51; McQuillen on Municipal Corporations, §§ 342, 145; Duncan v. Lynchburg (Va.) 34 S. E. 964, 48 L. R. A. 331, 23 C. J. p. 129.

It is unimportant, therefore, that the application addressed to us alleges more fully than the original petition the incorporation of the city of Lake Charles as being by virtue of special Act 79 of the year 1867, and various amendments to the original act.

Respondent judge, in his answer to this application, has attempted to meet that issue by the statement that he is of the opinion that the city of Lake Charles is incorporated under the Lawrason Act (Act 136 of 1898); that its powers and duties are regulated by the general municipal laws of the state; and that therefore, in any event, Act 114 of 1916, amending section 15 of the Lawrason Act, applies in this case.

[3] We cannot concur in that view of the matter. The town of Lake Charles was first incorporated under Act 79 of 1867, p. 155. This original charter merely provided for "all powers that are prescribed by law," and did not vest in the municipal authorities any specific rights to grant franchises.

The special charter granted later to Lake Charles by Act 200 of 1898 was made subject to approval by the electorate, and was rejected at an election held in October, 1898. It was not until the year 1899 that the municipality of Lake Charles, availing itself of

section 43 of the Lawrason Act, amended its original charter of 1867.

Paragraph 6 of section 5 of this amended charter confers the right upon the town council to grant to railroads the use of the streets for the construction of their tracks. This charter so adopted is the present charter of Lake Charles.

It does not follow, by any means, that Lake Charles came under the Lawrason Act, because that municipality in 1899 amended its original charter of 1867 under section 43 of that Act, as it is expressly provided in that section "that when a municipality now existing, which has not come under the provisions of this act, shall desire to amend its charter, the same may be done in this way: The mayor and board of aldermen may prepare, in writing, the desired amendments, have the same published for three weeks in a newspaper published in the municipality, if there be one, and, if none, then by posting for said time in at least three public places therein; the proposed amendments shall then be submitted to the Governor, who shall submit them to the Attorney General for his opinion. If the Attorney General be of the opinion that the proposed amendments are consistent with the Constitution and laws of the United States and of this state, including this act, the Governor shall approve the proposed amendments. If after publication made, one-tenth of the qualified electors of the municipality shall protest against the proposed amendments, or any of them, the Governor shall not approve the ones protested against until they shall be submitted to and ratified by a majority of the electors of the municipality."

In other words, Lake Charles in 1899, instead of coming under the Lawrason Act, and thereby surrendering its original charter of 1867, retained that charter, and amended the same under section 43 of the Lawrason Act.

Lake Charles is therefore a municipality incorporated by special act.

[4] 3. It follows necessarily that the amendment of section 15 of the Lawrason Act by Act 114 of 1916 did not change or otherwise affect the special charter of Lake Charles, unless such amendment repealed Act 76 of 1914, as the latter act amended the charter of Lake Charles in so far as the granting of franchises without referendum is concerned, and required approval by the electorate. The amendment by Act 114 of 1916 of section 15 of the Lawrason Act is identical with the same section in the original act (136 of 1898), with the single exception of the new matter contained in the third paragraph of section 15 in the later act, and which relates to the regulation of livery and sales stables, and of the running at large of animals of all kinds within the corporate limits.

Paragraph sixth of section 15 of the original Lawrason Act (136 of 1898) confers upon municipalities coming under the act the right "to provide for and regulate the construction and passage of railways and street railroads through the streets, avenues, alleys, or lanes and public grounds of the municipality."

Act 76 of 1914 unquestionably amended the original Lawrason Act by requiring the submission to a vote of the property taxpayers of all ordinances granting the right to use and occupy the streets of a municipality, as both of these acts are general laws, and the Act of 1914 is the later law.

As said in the Louisiana Western R. Co. v. City of Crowley, 142 La. 645, 77 So. 487:

"The corporation and its officers were governed by a charter adopted by the inhabitants of the town, pursuant to a general law providing for the adoption of municipal charters. Act No. 49 of 1882, p. 60. Surely the officers of the municipal corporation, their functions and authority, were governed and controlled by general laws enacted either before or after the municipal charter was adopted."

The sole object of Act 114 of 1916 was to amend section 15 of Act 136 of 1898 as to the regulation of livery and sales stables and as to the running at large of animals of all kinds. No other change was made in section 15 of the Lawrason Act by the later amending act (114 of 1916).

[5] As the original Lawrason Act (136 of 1898) had been amended by Act 76 of 1914, so as to require a referendum vote approving franchise ordinances, and as at the date of the passage of Act 114 of 1916 amending section 15 of the Lawrason Act this amendment was still in force and effect, how can it be reasonably argued that Act 114 of 1916 had the effect of repealing Act 76 of 1914, when the former act made no change whatever in the Lawrason Act as to franchises, and did not expressly repeal Act 76 of 1914? Repeal by implication is not favored.

[6] A mere recopying of the franchise paragraphs of section 15 of the Lawrason Act into the later act (114 of 1916) still left these franchise paragraphs intact, and as amended by Act 76 of 1914, in the absence of express repeal of that act. The Legislature evidently took this view of the matter, and passed in the year 1916 Act 194, which grants specifically to the governing authorities of all cities, towns, and villages, with a population not exceeding 10,000 inhabitants, the right to grant franchises for the construction and operation of railroads over the streets, alleys, and other public places in such cities, towns, and villages.

The repeal of all general and special laws, or parts thereof, in conflict with Act 194 of 1916, necessarily excepts the above class of cities, towns, and villages from the operation of the general law (Act 76 of 1914), requiring the submission of ordinances granting such franchises and approval by the property taxpayers, as Act 194 of 1916 deals exclusively with the same limited subject-matter embodied in the Act of 1914.

If the Legislature had intended to repeal Act 76 of 1914 by the amendment of section 15 of the Lawrason Act by Act 114 of 1916, obviously that body would not have found it necessary to pass, in the same year and at the same session of the General Assembly, Act 194 of 1916 to exempt cities, towns, and villages of not less than 10,000 inhabitants from the operation of Act 76 of 1914, requiring the approval by the electorate of such franchise ordinances.

Therefore we have in this case both the judicial and the legislative interpretations placed upon Act 114 of 1916 in agreement as to its purpose and effect. For these reasons it is the opinion of the court that Act 76 of 1914 was not repealed by Act 114 of 1916, and that the special charter of Lake Charles was amended as to the granting of franchises by the former act.

4. Whether Act 79 of 1896 was repealed by Act 136 of 1898, as decided in the Lewis Case, is immaterial in the present case, as Act 79 of 1896 does not apply.

5: In Mandeville Ice & Light Co. v. Town of Mandeville et al., 139 La. 286, 71 So. 512, it was held that Act 76 of 1914 did not repeal section 1, par. 7, of Act No. 111 of 1912, authorizing towns to grant the use of their streets for the erection of electric light poles, etc., as the later act was intended to enlarge, and not to restrict, the powers of towns, and referred to unusual and serious obstructions, such as buildings, and not to customary obstruction of electric light poles, so that a company, proceeding to erect such poles under the authority of an ordinance of a town, will not be enjoined.

Act 111 of 1912 is an amendment to section 15 of Act 136 of 1898, the Lawrason Act.

The sixth paragraph of Act 111 of 1912 grants to municipalities under the act the right "to provide for and regulate the construction and passage of railways and street railroads through the streets, avenues, alleys, or lanes and public grounds of a municipality." The seventh paragraph grants "the

right for the erection of telegraph, electric light, or telephone poles, posts and wires along and upon any of the streets, alleys or ways of the municipality and change, modify, and regulate the same." The eighth paragraph grants "to any person or corporation the use of the streets, alleys and public grounds for the purpose of laying gas, water, sewer, or steam pipes, or conduits for electric light, to be used in furnishing or supplying the municipality and inhabitants or any person or corporation, with gas, water, sewerage, steam or hot air for heating purpose, or light."

Act 76 of 1914 applies to cities of more than 10,000, and less than 75,000, inhabitants, and confers upon them "authority to grant to railroads and other corporations the right to use and occupy the streets and alleys therein and to obstruct same, or part thereof, with buildings necessary to and used by said corporations; provided that prior to said grant a majority of the property taxpayers in said city or town voting at an election to be called for such purpose shall approve said proposed grant; provided further that in making said grant, the said cities and towns through their councils shall impose such conditions and make such changes as they may deem fit."

The statement in the opinion in the Mandeville Case as to the scope of Act 76 of 1914, that "evidently its object was to enlarge, not to restrict, the powers of towns," is not borne out in our opinion by the provisions of the act of 1914.

It would be difficult to imagine an enlargement of powers over and above those enumerated in Act 111 of 1912 as far as the use and obstruction of streets are concerned by public utility corporations. Whether the streets are obstructed merely by railroad tracks, or by railroad tracks and buildings, or by electric light, telegraph, or telephone poles, is unimportant in our opinion, as the evident purpose of Act 76 of 1914 is to prevent these obstructions altogether, and to secure to the property owners the free use of the public streets of a town or city, unless such obstruction is permitted by their consent expressed at the ballot box.

[7] When it is considered that public streets may be obstructed under Act 111 of 1912 by public utility corporations at the mere will of a town or city council, it is difficult to understand how the powers of these municipal bodies have been enlarged by Act 76 of 1914, which requires the approval of the property owner, in addition to the consent of the common council, before an ordinance permitting the use and obstruction of a public street can become operative and effective. Manifestly the referendum election required in such cases is a limitation and restriction, and not an enlargement, upon the powers of municipal bodies in the granting of such franchises. The decision in the Mandeville Case is clearly contrary to the decision in the Crowley Case, 142 La. 640, 77 So. 486, and is overruled, as Act 76 of 1914, being the later act, necessarily repeals the sixth, seventh, and eighth paragraphs of section 15 of Act 111 of 1912, in so far as grants are permitted to be made without referendum vote.

6. It was said in the Connell Case, 153 La. 797, 96 So. 660:

"There is no room for doubt that Act 76 of 1914 * * * was enacted by the Legislature to repeal all prior special laws in conflict therewith and under which any cities or towns throughout the state, within the designated number of population, might have been governed. It follows, therefore, that the petition fully supports a right and cause of action in petitioner as a property taxpayer, to invoke the relief prayed for."

[8] It is conclusive, under the decision cited, that the special charter of Lake Charles, as amended in the year 1899, is controlled by Act 76 of 1914 as to the requirement that the franchise ordinance proposed in this case in the commission council must be submitted

to and approved by the vote of the property taxpayers of that city.

[9] 7. The attempt to pass the ordinance in question, without such charter requirement, is plainly an act upon the part of the commission council in excess of its authority. As the threatened or impending violation of the charter of Lake Charles, if consummated, would be wholly ultra vires, the plea of prematurity to the present action of relator as well as the exception to the jurisdiction of the district court, was properly overruled, and, as relator's petition discloses a right and cause of action, the temporary injunction should have issued. Connell v. Commission Council, 153 La. 797, 96 So. 660, et seq. The proposed action on the city's part in this case cannot be treated simply as a legislative act, as it involves entering with the railroad company into a contract materially affecting the interests of citizens, and not only unauthorized, but forbidden, by the city charter.

[10] As well stated in Trading Stamp Co. v. Memphis, 101 Tenn. 181, 47 S. W. 136:

"There is a broad distinction between the exercise of legislative authority when the power or jurisdiction to exercise it has been conferred by law, and an attempt to legislate upon matters clearly ultra vires. Where there is power and authority conferred by law to do any legislative act, the discretion of the council cannot be controlled, but when there is no legislative authority or power, injunction will lie. A municipal corporation has no discretion to do any act which is clearly illegal and beyond its power."

See Connell v. Commission Council, 153 La. 793, 96 So. 657, and numerous authorities there cited.

8. Since respondent judge has construed relator's petition as fixing the population of Lake Charles between 10,000 and 75,000, we do not find it necessary to consider the motion to strike out the amendment in the petition showing the above population, although such motion was maintained.

For the reasons assigned, it is ordered that the judgment refusing to issue the injunction in this case be annulled and set aside, and it is now ordered that the preliminary injunction issue, as prayed for, upon relator's furnishing bond in a sum to be fixed by the trial court.

OVERTON, J., dissents. He thinks that the plea of prematurity should be sustained.

ROGERS, J., dissents, being of the opinion that the plea of prematurity should be maintained.