McCALEB, 'Justice.
 

 Sigmund Masur and his family are the owners and operators of a large department store, known as “The Palace”, located in the business district of the City of Monroe. This store fronts on DeSiard Street and runs completely through the block so that its rear abuts on Harrison Street. Masur and family are also the owners of a plot of ground fronting on Harrison Street directly across the street from the rear of the Palace department store.
 

 On January 14, 1941, the Masur family entered into a written contract with one C. E. Andrews for the erection óf a two-story building upon t the plot of ground fronting on Harrison Street, it being their intention to use the building to be constructed as a warehouse and storeroom in connection with the business operated by them across the street at the Palace. This contract also provided for the erection of an overhead passageway or viaduct across Harrison Street connecting the rear of the department store with the new structure which would make both buildings more readily accessible to the employees of the Masurs and would thereby obviate their use of the surface of the street in transporting goods or merchandise from one building to the other.
 

 Shortly after this contract had been let, the Masur family applied to the City Council of Monroe for a permit to erect the overpass or viaduct over Harrison Street. Thereafter, Mr. H. H. Benoit, Mayor of the City, submitted an ordinance to the Council by which it was proposed that permission be given to the Masurs to construct
 
 *167
 
 a viaduct across and over Harrison Street having a minimum clearance above the street of hot less than fifteen feet, a width of not over six feet and a height of not more than seven feet six inches. It was further provided that the overpass should have no footing, foundation, supporting piers or. any form of support in or upon Harrison Street; that the privilege to be accorded to the Masurs would be for a term of twenty-five years for the consideration of $1,250, payable in twenty-five equal annual installments of $50 each in advance; that the grantees would not be permitted to exercise the privilege or license except for their own business; that the City would retain full power to revoke or repeal the grant at any time it saw fit and that the construction and continued maintenance of the viaduct should remain subject at all times to the police powers of the municipal government.
 

 The purpose for the proposed grant to the Masur family is contained in the preamble of the ordinance. It is therein stated that it is the sense and finding of the City Council of Monroe that the viaduct or overpass will in no-way impede or interfere with the free passage of traffic upon Harrison Street and the free use of said street by the public, but that, as a matter of fact, it will materially reduce and lessen the hazard to public safety which will otherwise arise from the considerable cross traffic between the buildings of the Masurs on the street surface, and that the Council believes that the public convenience and safety will be materially served and benefitted by the proposed construction.
 

 Upon the proposal of this ordinance, the plaintiffs, Durrett Hardware
 
 S¿
 
 Furniture Co., Inc., Millsaps Realty Co., Inc., Hotel Frances, Inc., Central Savings Bank & Trust Company, John S. Hunt, Carl H. McHenry and Otis E. Hodge, residents and taxpayers of the City of Monroe who either own or have mortgages upon property situated within the vicinity of Harrison Street, protested to the City Council of Monroe against the adoption of the ordinance claiming that the overpass, if erected, would cause material damage to their property and that the Council was without power to permit the Masur family to make use of a part of Harrison Street for their private business.
 

 Mr. Benoit, the Mayor of the City, in reply to these protestations, stated that the proposed ordinance was on file; that the members of the Council had committed themselves to its passage prior to the time that any objection had been brought to their attention and that it would be adopted in due course.
 

 Upon the receipt of this communication from the Mayor, the plaintiffs instituted the present suit against the City of Monroe and the members of the City Council for an injunction restraining and prohibiting the City Council from passing the proposed ordinance granting to the Masurs the right to construct the overhead passageway above described. The sole ground advanced by the plaintiffs for the relief sought is that the City of Monroe, under the powers delegated to it by the Legislature in its Charter (Act No. 47 of 1900, as amended), has no right or authority to permit any per
 
 *168
 
 son to use the public streets of the city for a private purpose and they claim that the adoption of the proposed ordinance will cause them immediate and irreparable injury.
 

 In compliance with the prayer of the petition, a rule was issued by the District Judge for the defendants to show cause why the relief prayed for by the plaintiffs should not be granted. On the return day of this rule, the defendants appeared and filed (1) an exception of prematurity, (2) an exception of no right or cause of action, and (3) an answer in which they averred that the City was vested with full power and authority to adopt the proposed ordinance. The Masur family intervened in the proceeding setting forth that the City had the right to grant them permission to .erect an overpass on Harrison Street; that the overpass would in no way interfere with the plaintiffs’ full use and enjoyment of that street; that the proprietors of real estate situated on Harrison Street within the immediate vicinity of the proposed location of the overpass had consented to its erection and that the úse to which the overpass would be put would relieve, rather than obstruct, traffic in and upon Harrison Street.
 

 After a consideration of the arguments made on the exceptions filed by the defendants, the District Judge overruled them and expressed the opinion that the City of Monroe was without power or authority to enact the ordinance which he found was designed for the purpose of permitting the Masurs to use the public street for their private purpose. Being of the view that the passage of such an ordinance would constitute an ultra vires act of the City Council, the judge decided that it would not be necessary to hear evidence in the case. He, accordingly, issued the preliminary injunction prayed for by the plaintiffs and dismissed the intervention of the Masur family. The defendants and the intervenors have prosecuted this appeal from the adverse decision.
 

 The first question presented for determination is whether the District Judge erred in refusing to sustain the defendants’ exception of prematurity. This plea’ is based upon the theory that, since the City Council of Monroe has not as yet adopted the ordinance (although it is alleged that its members have committed themselves in favor of its passage), a court of equity cannot properly interfere with or, in advance, restrain the discretion of a municipal body while it is in the exercise of powers that are legislative in their character.
 

 The plaintiffs, while recognizing that, as a general rule, equity will not interfere with a municipal body merely because it threatens to pass an ordinance which is claimed to be invalid, proclaim that this doctrine is subject to exceptions and that an injunction will lie in case the proposed action is violative of a prohibitory statute or in case it is ultra vires. They argue that, since the City of Monroe has been delegated by the Legislature only such powers as are contained in its charter and since no power, either express or implied, has been accorded to it to grant permits to persons to use the public streets of the city for a private purpose, the contemplated adoption of the ordinance by the City Council constitutes ultra vires action which a
 
 *169
 
 court of equity will restrain. The cases of Connell v. Commission Council, 153 La. 788, 96 So.
 
 657,
 
 and Wachsen v. Commission Council, 162 La. 823, 111 So. 177, are cited in support of this proposition.
 

 That a court of equity may not ordinarily enjoin a municipality from passing an ordinance where it is acting under the guise of its legislative pow;ers is well settled in Louisiana. See Harrison et al. v. City of New Orleans, 33 La.Ann. 222, 39 Am.Rep. 272; State ex rel. Behan et al. v. Judges, 35 La.Ann. 1075; New Orleans Elevator Ry. Co. v. New Orleans, 39 La. Ann. 127, 1 So. 434; Connell v. Commission Council, supra, and Wachsen v. Commission Council, supra. This rule is likewise. firmly embedded in the authorities from other jurisdictions. See 28 Am.Jur. p. 367, § 178, and cases there cited. Also New Orleans Water-Works Co. v. City of New Orleans, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518.
 

 The only exception which has been recognized by this Court to the above stated doctrine is in cases where the threatened action by the municipal council is in direct violation of a prohibitory law. Thus, in Connell v. Commission Council, supra, where an act of the Legislature prohibited municipalities from conferring on public utilities special privileges in the use of the public streets without first submitting the proposal to a vote of the property taxpayers, it was held that an interested party was entitled to enjoin the Commission Council from granting such a franchise without complying with the requirements of the prohibitory law, and that, in such case, it was unnecessary that the plaintiff show irreparable injury.
 

 In Wachsen v. Commission Council, supra, the Court had before it the identical question which was presented in the Connell case and, following that decision, held that where the proposed action by the municipality is forbidden by law, an injunction will lie to restrain the Council from adopting the ordinance.
 

 Council for the plaintiffs maintain that the exception to the general rule which was adopted and applied in the Connell and Wachsen cases is broad enough to authorize the issuance of an injunction restraining a municipality from passing an ordinance where it appears that its charter does not either expressly 'or impliedly grant to it the power to legislate on the proposed subject matter even though there be no statute forbidding it from doing so. In other words, it is argued that the exception to the general rule is not to be confined to cases where the proposed action is specifically prohibited by statute but that it also applies in cases where power to enact the ordinance has not been expressly or impliedly delegated by the Legislature.
 

 In order to determine .the correctness of this proposition, it is important to examine the decision in the Connell case with a view of ascertaining the underlying reason which justified the departure from the general rule.- In that matter, the court undertook to distinguish the Harrison, Behan and New Orleans Elevator Ry. cases on the ground that in those cases the powers sought to be exerted by the municipalities
 
 *170
 
 were not specially denied to them by the Legislature. It was further stated that, where the ordinance to be enacted pertains to subject matter which, by statute, must first be submitted to the people for their approval, then the municipality is not exercising a legislative function but is acting solely in an executive or administrative capacity. In fine, where the Legislature prohibits the municipality from acting until the matter has been presented to the people for their decision, it is without jurisdiction to legislate at all, and, if the matter is submitted to the people and they approve it, then the passage of the ordinance is purely an administrative act. Therefore, an attempt on the part of a municipal body to ignore the statutory prohibitions and override the vested rights of the people may be restrained by any taxpayer who is entitled to vote upon the subject matter of the ordinance, for the suit is in truth one of a public nature.
 

 However, in the case at bar, no statutory restriction has been placed upon the City of Monroe denying to it the right to legislate on the subject matter of the ordinance which has been proposed. Plaintiffs’ attack upon the contemplated action by the City Council is founded exclusively on the theory that it lacks the power to pass such an ordinance. The Council, on the other hand, contends that it is exerting legislative powers expressly granted to it by the City •Charter and it is maintained that, under its police power and finder its right to regulate traffic upon the streets of the City, it is vested with full authority to enact the proposed ordinance.
 

 Whether the plaintiffs’ contention or that of the City Council should be sustained is an issue which can be fully determined if and when the ordinance is passed and in the event its enforcement damages or otherwise causes injury to the plaintiffs or other property owners. It is obvious that the mere passage of the ordinance will not cause irreparable damage to the plaintiffs. And, in the absence of such damage, equity cannot be resorted to for the purpose of preventing the City Council from adopting an ordinance concerning a matter which it asserts is within the scope of its delegated .powers.
 

 Under our system of government providing for a distribution of powers between the legislative, executive and judicial departments, it is of vital importance that no one department unduly interfere with or hinder any other department while the latter is acting or assuming to act within the scope of the particular powers reserved to it. The judiciary should always be reluctant to interfere with a legislative body while it is deliberating upon matters commonly within its own field of action and, unless it clearly appears that it is attempting to assume- power which does not reside in it and that the action sought to be prevented will result in immediate and irreparable injury to the complainant, the court should not entertain the proceeding.
 

 In the case of New Orleans Water-Works Co. v. City of New Orleans, supra [164 U.S. 471, 17 S.Ct. 165, 41 L.Ed. 518], the Supreme Court of the United States, in dealing with the right of a complainant to restrain a city council from enacting ordi
 
 *171
 
 nances in violation of an exclusive franchise previously granted by it, remarked:
 

 “If it be said that a final decree against the city, enjoining it from making such grants in the future, will control the future action of the city council of New Orleans, and will, therefore, tend to protect the plaintiff in its rights, our answer is that a court of equity cannot properly interfere with, or in advance restrain, the discretion of a municipal body while it is in the exercise of powers that are legislative in their character. * * * If an ordinance be passed, and is invalid, the jurisdiction of the courts may then be invoked for the protection of private rights that may be violated by its enforcement. Page v. Baltimore, 34 Md. 558, 564; Baltimore v. Radecke, 49 Md. 217, 231 [33 Am.Rep. 239], * * *
 

 “The mischievous consequences that may result from the attempt of courts of equity to control the proceedings of municipal bodies when engaged in the consideration of matters entirely legislative, in their character, are too apparent to permit such judicial action as this suit contemplates. We repeat that when the city council shall pass an ordinance that infringes the rights of 'the plaintiff, and is unconstitutional and void as impairing the obligation of its contract with the state, it will be time enough for equity to interfere, and by injunction prevent the execution of such ordinance. * * * ”
 

 So we say here that the threatened action by the City Council of Monroe to pass the ordinance in question does not cause any injury whatever and that it will be time enough when the ordinance is adopted and sought to be enforced for the plaintiffs to assail it as being ultra vires. Whether the City Charter vests in the Council the authority to grant to persons a permit to use part of the public street above the surface on the theory that such use will relieve traffic congestion and thereby promote public safety and convenience is a question which can be fully determined after the Council has acted. But equity will not interfere in advance merely upon the complaint that the Council is without power to adopt the ordinance where it does not appear that it is acting in direct violation of a prohibitory law. As said by the Supreme Court of Georgia in a recent case of Zaring v. Adams, 188 Ga. 97, 3 S.E.2d 635:
 

 “The writ of injunction, commonly referred to as the ‘strong arm of equity,’ as a general rule may be sought only where there is a manifest necessity therefor to prevent irreparable injury to some right of the plaintiff, by reason of impending acts or conduct of another. Accordingly, it may not be resorted to where it does not appear that the acts and conduct sought to be enjoined will, if committed, work substantial and irreparable injury to the plaintiff.”
 

 The defendants’ plea of prematurity is well founded and it is therefore maintained.
 

 For the reasons assigned, the judgment appealed from is reversed and it is now ordered that the plaintiffs’ suit be dismissed at their cost.