LANDRY, Judge.
This appeal by defendant, Parish Council of the Parish of East Baton Rouge (Council), presents a single issue of law for decision. Said question is whether the Council, as the governing authority of East Baton Rouge Parish, possesses the authority to close a municipal airport under its administrative control. Plaintiffs, as citizens of the Parish of East Baton Rouge and users of the airport facility, instituted this action to enjoin the pioposed closure of subject airfield and the diversion of the property to other uses. Alternatively, plaintiffs prayed for a declaratory judgment decreeing the Council without authority to effectuate its declared intent to cease operation of the airport as of an announced date. The trial court granted the declaratory judgment. It also held the Council was without authority to discontinue use of the property in question as a public airport and permanently enjoined defendant from closing the airport or converting the property to some other public purpose.
To plaintiffs’ petition the Council filed a dilatory exception of prematurity and a peremptory exception of no cause and no right of action, both of which will hereinafter be discussed in detail. On this appeal the Council reurges its said exceptions and complains of the lower court’s action dismissing and rejecting same. Additionally, appellant contends the trial court erred in deciding appellant lacked legal authority to close the airport in question and also erred in enjoining appellant herein. We find the trial court correctly rejected defendant’s exceptions but erred in holding defendant lacked legal authority to close the airfield and in enjoining defendant from doing so.
The undisputed facts attending this controversy appear by way of a lengthy and detailed stipulation. Pursuant to call by the Police Jury of East Baton Route Parish (Police Jury), the then governing authority of the Parish of East Baton Rouge, an election was held August 20, 1929, approving a proposed property tax authorization to levy a fioths of one mill assessment for the purpose of acquiring, building, constructing, equipping and maintaining an airport comprised of 200 acres of land from a portion of Goodwood Plantation. Subsequently, on November 12, 1929, the Police Jury issued Airport Certificates of Indebtedness in the amount of $103,000 secured by the aforesaid tax. Of said proceeds the sum of $50,000 was expended to purchase the airport property and the remainder spent in the construction of buildings and runways necessary to convert the land into an airfield to accommodate small, privately owned planes.
Title to subject property was acquired by the Police Jury pursuant to act of cash sale dated February 14, 1930. The property conveyed is, insofar as essentials are concerned, described as a 200 acre tract, being a portion of what was formerly known as Goodwood Plantation. The deed further recites the purchase is made by the Police Jury pursuant to an ordinance adopted January 14, 1930, a certified copy of which is annexed to the transaction. No mention is made in the deed proper of the use to which the property may be put. However, Section 3 of the attached ordinance refers to the above mentioned property tax authorization and an ordinance of the Police Jury adopted November 12, 1929, anticipating the revenues to be derived from the tax and dedicating the proceeds thereof to retirement of the aforementioned certificates of indebtedness.
When the airport site was acquired, the City of Baton Rouge was a relatively small community. The tract then lay outside the *797 municipal limits and was surrounded primarily by vacant, unimproved lands. Since its purchase the property has been continuously utilized as an airport to accommodate small, privately owned airplanes. It is conceded use of the property for airport purposes is restricted by an absence of ground to air radio communication facilities to aid takeoffs and landings and the inexistence of runway lights necessary for nighttime use of the field. . It is also acknowledged that some portions of the tract are presently being used for other public purposes, namely, a branch library and fire station, neither of which impedes use of the property for airport purposes. Due to the accelerated growth and expansion of the city and parish in recent years, the airport is presently situated within the city limits. It is currently abutted on the south by a four-lane major thoroughfare and by several large residential subdivisions of superior quality. To the east lies another principal roadway and several modern residential subdivisions. On the north is located Florida Boulevard, now the principal east-west traffic artery in the City of Baton Rouge, along which some of the city’s largest shopping centers and commercial enterprises are situated. On the west is Lobdell Avenue, presently a primary north-south means of vehicular travel.
By resolution adopted May 24, 1967, the Council declared its intention to close the airport as of December 1, 1968, with the understanding that steps be immediately taken to provide for an equal or better facility. In justification thereof, the Council maintains the stipulated facts show the airport is no longer situated on the outskirts of a small community. Rather, it appears the facility is now situated in the center of a highly congested commercial and residential area of the present metropolis. On this premise defendant urges continuous use of the site as an airport entails considerable risk and peril to adjoining business establishments and residences as well as the traveling public. Defendant further maintains the undesirable conditions thus produced can be relieved only by discontinuing use of the airport at its present site, converting the property to other public use and transferring the airport to a locality removed from the developed areas of the present city.
Defendant’s dilatory exception asserted the prematurity of plaintiffs’ action on the ground the resolution in question merely signified defendant’s intent to close the airport and does not amount to affirmative action on defendant’s part. On this premise defendant cites and relies upon Durrett Hardware & Furniture Co., Inc., et al. v. City of Monroe et al., 199 La. 329, 5 So.2d 911, 140 A.L.R. 433, as authority for the proposition that until positive action is taken by a municipality in matters of this nature, any attempt at judicial interference is premature.
Appellant’s peremptory exception of no right and no cause of action is founded on the theory that in the absence of definitive legislative action on the part of the Council, no justiciable issue is presented for determination. Therefore, reasons defendant, plaintiffs are in effect requesting merely an advisory opinion which is prohibited according to Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9.
On the merits defendant’s basic contention is there was no “dedication” of the airport property to said specific use by the governing authority concerned in the commonly accepted meaning of the term “dedication”. Consequently, defendant argues, there is no legal basis for the trial court’s judgment prohibiting defendant from changing the use of publicly owned property which, under certain express provisions of our civil code, is placed under defendant’s exclusive control.
Plaintiffs, however, contend the property in question was indeed dedicated by its many years of service as a public airfield and by the expenditure of many tax dollars in its construction and maintenance over the extended period which has elapsed *798 since its acquisition. Plaintiffs also maintain that since public tax funds were invested in the undertaking, defendant is without authority to change or divert the property to other uses as such action would cause a loss of the public funds so invested. In addition, plaintiffs aver the attachment to the act of sale of the ordinance of January 14, 1930, which recites that the money realized from the tax proceeds was for airport purposes, constitutes a “dedication” of the property for that use exclusively.
We find no merit in defendant’s exception of prematurity. While defendant’s action does not categorically order the airport closed, nevertheless the tenor of the resolution in question clearly demonstrates the finality of defendant’s decision to cease its operation as of a stated date. It is manifest from the resolution that further deliberation concerning the proposed closure was not contemplated by appellant. It is worthy of note that the resolution expressly directs immediate steps be taken to plan a new facility at another location. It is equally clear that the Council’s final decision in this matter has been made and it will proceed to close the airport if not enjoined from so doing.
In support of its plea of prematurity, defendant relies upon Durrett Hardware & Furniture Co. v. City of Monroe, 199 La. 329, 5 So.2d 911, which we find readily distinguishable from the case at hand. In the Durrett Hardware case, supra, plaintiffs sued to enjoin adoption of an ordinance which would permit construction of an overhead passageway across a public street. The ordinance in question, though on file with defendant city, had not been officially acted upon in any way whatsoever, it being conceded, however, the members of the governing authority were committed to its adoption. In the instant matter, defendant Council has made its decision by formal resolution which needs no further implementation.
Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9, and Petition of Sewerage and Water Board of New Orleans, 248 La. 169, 177 So.2d 276, are cited by defendant in support of its exception of no right and no cause of action. These cases rightfully hold that for an action for declaratory judgment to lie pursuant to LSA-C.C.P. Articles 1871 and 1872, a jus-ticiable controversy must exist between adversary parties.
We note that in the Stoddard case, supra, plaintiffs filed an action against defendant city seeking a judgment declaring the nullity of Act 118 of 1963, an industry promotion statute. Plaintiffs’ petition was dismissed on the showing that the city had neither taken nor threatened to take any action under the statute which was purely permissive in nature. The court properly ruled that until the city sought to implement the statute by some action on its part, no justiciable issue existed between the parties.
The Petition of Sewerage and Water Board case is likewise inapposite inasmuch as it was concededly a request for an advisory opinion and therefore not within the purview of LSA-C.C.P. Articles 1871 and 1872.
The rationale of the Durrett Hardware and Sewerage and Water Board cases, supra, seems clear. Until some official action is taken by a governmental agency to implement or effectuate an announced policy, the cited authorities hold no action will lie to test the validity of a proposed undertaking. In the case at bar there has been official action productive of immediate effect taken by defendant council in formal session. Such action is sufficient to create a justiciable controversy with an adversary who contests the propriety of the action taken.
The long standing jurisprudence of this state establishes that the term “dedication”, insofar as it concerns the use to which publicly owned real property may be 'put, applies exclusively to the acquisition *799 of property by a governmental agency from a private owner. Best Oil Company v. Parish Council of East Baton Rouge, La.App., 176 So.2d 630. Traditionally our courts have recognized two ways by which property may be dedicated by a private owner to public use. These are the statutory or formal method and the implied or “common law” dedication. Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798; Village of Folsom v. Alford, 204 So.2d 100; Anderson v. Thomas, 166 La. 512, 117 So. 573.
In the case at hand, however, we are not dealing with either of the recognized forms of dedication to public use by a former owner or proprietor. The deed in question is barren of language tending to indicate the vendors in question intended to dedicate the transferred property to any particular use. Insofar as the former owners are concerned, the transaction was a sale with no qualifications attached. Nor does the record contain the slightest bit of evidence regarding any implied dedication.
Contrarily, we are herein concerned with the question whether property acquired by a governmental agency and used for many years for a designated purpose may be put to other use by formal action on the part of the agency involved.
Plaintiffs contended below, and the trial court held, that because reference was made in the act of sale to the ordinance which authorized the purchase and referred to a tax measure passed to provide funds for the purchase of an airport site, the property acquired was effectively dedicated to such purpose.
A similar contention, made in a case wherein the deed itself made reference to the purported use of property sold, was rejected by the Supreme Court. We refer to Anderson v. Thomas, 166 La. 512, 117 So. 573, wherein the City of Shreveport purchased property pursuant to a deed containing the following:
“Said property to be controlled and used by the corporate authority of said city as a public park.”
In the Anderson case, supra, the court held that nothing in the deed indicated an intent on the part of the vendor to restrict use of the property conveyed or dedicated to any particular purpose. The court further observed that since a governmental agency may not deal with real estate in a private capacity and cannot purchase real property for other than a public use, the statement of purpose contained in the deed and attached resolution of authorization must be regarded merely as a declaration of public use to negate any ultra vires action on the part of the purchaser. The court further expressly held a declaration of use under such circumstances is not a legal dedication and that one municipal administration may not bind its successors in the exercise of such discretion as is vested in public officials. We hold, therefore, there was no “dedication” of the property in question.
Thus we are brought to the pivotal issue of whether the airport site falls within that category of publicly owned property whose use may be changed in the discretion of the governing authority having control thereof.
La.C.C. Article 454 defines public things as those which are for the common use of a city or other public place, such as streets and public squares.
Public things, as defined in Article 454, are categorized by La.C.C. Article 458 as follows:
“Things which belong in common to the inhabitants of cities and other places, are of two kinds:
Common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common; such as the streets, the public walks, and quays.
*800 And common property which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues.”
In effect the jurisprudence interpretative of Articles 454 and 458, supra, as well as certain other related codal provisions, has divided commonly or publicly owned property into two classifications, namely, “property of the public domain” and “property of the private domain”. The former classification results from the provisions of Article 454 and Article 458, paragraph 1, supra, which together define common property as that to which all inhabitants of cities and other places are entitled, such as streets, public walks and quays. The latter category is recognized pursuant to Article 458, paragraph 2, supra, which declares there are certain classes of common property which, even though publicly owned, are not for the common use of all inhabitants but may be employed for their advantage. For an excellent treatment of the entire subject matter, see an article entitled “Common, Public and Private Things in Louisiana: Civilian Tradition and Modern Practice”, by A. N. Yiannopoulos, 21 Louisiana Law Review 697, et seq.
The distinction noted is recognized in Anderson v. Thomas, supra, in the following language:
“The Civil Code draws a distinction between public things, the property of which is vested in the state, but the use of which is common to all the inhabitants thereof, ‘and even strangers,’ such as the seashore, river beds, highways, streets, and public parks, and public property, which is not for the common use of the inhabitants, but may be employed for their benefit, such as, for instance, the public offices, police and fire stations, markets, school houses, etc. R. C.C. 453, 454, 458.
The latter class of public property belongs absolutely to the municipality by which it has been acquired and may be dealt with as the municipality sees fit, subject only to the restrictions imposed by the deed of acquisition or by special laws.
The former class of public things belongs to the people, i.e., to the state, and the municipalities have only the administration thereof, unless otherwise authorized by special laws. And to this class belongs the property in controversy herein.”
In the Anderson case, supra, a public park was categorized as public property within the “public domain”. As such, it was held it could not be diverted to other use or partially used for any other purpose which would impede or hamper its use as a park without specific legislative authority. The rationale of the rule of Anderson, supra, is that property in the public domain is impressed with a servitude in favor of the public which the governing authority holds in trust as administrator for the state, consequently no change in use or incompatible partial use thereof may be effected without legislative authorization.
However, even as to public property in the public domain, other uses not inconsistent with its primary use may be permitted. For example, in City of Shreveport v. Kahn, 194 La. 55, 193 So. 461, mineral development of a public park was permitted upon a showing that the use of the property for public park purposes would not be materially impeded or interfered with as a result thereof.
The criteria of public property in the private domain does not appear to have been established with any degree of certainty by the jurisprudence as we understand it. We note that in Anderson v. Thomas, supra, an auditorium was classified as public property in the private domain apparently on the ground such a facility is only quasi-public in that, inter alia, it is let for hire, and charging of admissions for entertainment staged there neces *801 sarily excludes the general public from its unrestricted use.
Considering the applicable codal provisions and pertinent jurisprudence, it would appear that public property in the public domain envisions such publicly owned property and facilities as are open to the use of all peoples indiscriminately and without charge and which serve no quasi-commercial or proprietary purpose. Included in this classification are streets, public parks, public walks, libraries, public squares and museums.
On the other hand, publicly owned property or facilities which by their nature are not open to use by the general public but are employed for the common good, such as public offices, police and fire stations, auditoriums and schoolhouses, would appear to fall within the classification of public property in the private domain. In this same order would be included publicly owned property of a quasi-proprietary or quasi-commercial nature such as public markets, airports and port facilities open to that segment of the public having need therefor and for whose use a fee or charge is levied.
We conclude a public airport is not common property to the use of which all are entitled and therefore such facilities do not fall within the classification of public property in the public domain. On the contrary, such facilities are by their very nature restricted in use. Obviously such an installation may be availed of only by those who own, rent or travel by small private airplanes. Moreover, an airport is commercial in nature or at least quasi-commercial in that those who use its facilities are charged for the privilege.
It is of importance that defendant is not seeking to dispose of the airport site or convert the property to private use. Defendant is seeking merely to close an airport which it deems no longer suitable for the purpose originally intended.
We find the property in question falls within, that classification which according to Anderson v. Thomas, supra, “belongs absolutely to the municipality by which it has been acquired and may be dealt with as the municipality sees fit, subject only to the restrictions imposed by the deed of acquisition or by special laws.”
No limitation, restriction or prohibition against closure of the airport appears in the deed of its acquisition. Neither are we aware of any special law prohibiting defendant from closing the facility in question.
 A determination of this character lies within the sound discretion of the governing authority concerned whose decision will not be interfered with by thé courts in the absence of an abuse thereof. We find no such abuse in the case at hand. On the contrary, the action taken by defendant herein appears fully justified by the attending circumstances.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court overruling and dismissing defendants’ exceptions of prematurity and no right and no cause of action be and the same is affirmed.
It is further ordered, adjudged and decreed the judgment of the trial court declaring that defendants The Parish Council of East Baton Rouge Parish, the City Council of the City of Baton Rouge, and its individual members are without authority to close the Downtown Airport, or use said airport property for any other purpose than that of an aviation facility, be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that the permanent injunction issued herein restraining defendants from closing the Downtown Airport or using said property for any purpose other than an aviation facility be and the same is hereby annulled, reversed and set aside.
*802 It is further ordered, adjudged and decreed that plaintiffs’ suit he dismissed with prejudice, at plaintiffs’ cost.
Affirmed in part, reversed in part and rendered.