Dear Secretary McKeithen and Ms. Norton:
Your request for an Attorney General's opinion has been assigned to me for research and reply. Your question is as follows:
 What is the Secretary of State's duty with regards to investigating compliance with state and/or federal law on a reapportionment plan prior to conducting an election when the Secretary of State receives a reapportionment plan from a school board or police jury?
The Secretary of State's duties are prescribed in the 1974 Louisiana Constitution Article IV, Section 7 as follows, in part:
 Section 7. There shall be a Department of State. The secretary of state shall head the department and shall be the chief election officer of the state. He shall prepare and certify the ballots for all elections, promulgate all election returns, and administer the election laws, except those relating to voter registration and custody of voting machines.
LSA-R.S. 18:1941 states:
 A. Each political subdivision of this state which submits any proposed change in voting practice or procedure to the Department of Justice pursuant to Section 5 of the Voting Rights Act of 1965* shall, at the same time as the submission, send a copy of its submission, by certified mail, to the secretary of state. The political subdivision shall also send to the secretary of state, by certified mail, a copy of any response to the submission received from the Department of Justice.
 B. The entity responsible for sending a copy of the submission and any response thereto to the secretary of state, as required pursuant to this Section, is the submitting authority as defined in the Voting Rights Act of 1965.
*42 U.S.C. § 1971, et seq.
Thus, under federal law, Section 5 of the Voting Rights Act of 1965, as amended 42 U.S.C. § 1973c, you are prohibited from enforcing any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on the date of coverage for Louisiana [November 1, 1964], until either: (1) a declaratory judgment is obtained from the U.S. District Court for the District of Columbia approving the voting change, or (2) the voting change has been approved by the U.S. Attorney General.
We do not find a duty under state law for the Secretary of State to "investigate compliance" with state law. When a local jurisdiction, such as a school board or police jury, enacts an ordinance to provide for the reapportionment of their body, said ordinance is presumed valid and in compliance with the constitution and laws of our state. Municipal legislative acts are presumed to be valid and are to be interpreted to sustain validity if susceptible to reasonable interpretation having this effect. City of Shreveport v. Curry, 357 So.2d 1078 (La. 1978).
Enclosed herein for your information and review is a copy of Attorney General Opinion No. 02-196A, which includes a more detailed analysis with regard to the legality of local ordinances.
We hope this opinion sufficiently addresses your concerns, and if our office can be of further assistance, please advise.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL ___________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb Enclosure
OPINION NUMBER 02-196A
August 7, 2002
24 ELECTIONS — Conduct of Primaries General 41 ELECTIONS — Reapportionment
Clarification of Atty.Gen.Op. No. 02-196 regarding compliance with the election laws and the conduct o elections following reapportionment.
Honorable Suzanne Haik Terrell Commissioner of Elections P.O. Box 4729 Baton Rouge, LA 70821-4729
Dear Commissioner Terrell:
Your request for a clarification of Attorney General Opinion No. 02-196 has been assigned to me for research and reply. Specifically, you ask the following questions:
 Question 1: If a precinct or group of precincts has been adopted within the adoption window, but technical problems exist with the adoption of that precinct which does not involve the moving of precincts lines (i.e. description error), may that technical change be made outside of the window without invalidating the precinct?
It is our opinion that generally speaking, a local governing body may cure a defective enactment of an ordinance by a subsequent enactment, where the ordinance is within the municipal power to enact same. In the factual situation you have presented, we do not find any state law which would prevent a local governing body from enacting an ordinance to cure a technical problem with the adoption of precincts, as long as the precinct boundaries are not changed outside of the time window of R.S. 18:532.1
(G), as prohibited by that law.
 Question 2: If a police jury, parish council, or school board adopted within the window their reapportionment plan using maps and/or statistical data indicating precincts would be divided, but the ordinance adopting the new precinct descriptions and designations was adopted outside of the window, what action should be taken by the police jury or parish council? Have the new precincts been properly adopted? Can an election be held on such precincts?
As stated in our opinion, No. 02-196, the law does not provide for an amendment to a local governing ordinance which would actually change precinct boundaries outside of the window of time provided in R.S. 18:532.1. We further opined that the effect on the viability of the two precincts is that they were not successfully divided by the parish governing authority. We answered the question of what could be done in such a situation as, "They can wait for the next window of December 1, 2002 through March 31, 2003 in which to properly split the precinct, or they can file a court action and ask a court to validate the precincts which were properly split on visible census tabulation boundaries outside of the window of September 1, 2002 through March 1, 2002, as being necessary to accomplish reapportionment."
Thus, in response to your question, it remains our opinion that the police jury or parish council may wait for the next window of December 1, 2002 through March 31, 2003 in which to move precinct boundaries in accordance with the law, or they may seek court approval for their actions outside of the window of R.S. 18:532.1, as being necessary to accomplish reapportionment.
With regard to whether elections can be held on such precincts, we have spent a lot of time researching and debating this issue, which we find to be separate and apart from the local jurisdictions' problems of precinct changes outside of the window provided by the law. We start by stating that in general, "municipal legislative acts are presumed to be valid and are to be interpreted to sustain validity if susceptible to reasonable interpretation having this effect. City of Shreveport v. Curry,357 So.2d 1078 (La. 1978)", Gurst v. City of Natchitoches, 428 So.2d 502
(La.App. 3 Cir. 1983). See, Attorney General Opinion No. 02-296, enclosed herein. Further, it is often said that ordinances, like statues, are presumed to be valid with the burden of proof establishing unconstitutionality on the party challenging the ordinance.
The next issue to consider is whether our courts have consistently required strict compliance with the statutory procedures of the election laws of this state, such that failure to comply with said procedure is fatal to the validity of the ordinance at issue and ultimately, the election.
In the election contest suit of Adkins v. Huckabay, 99-3605 (La. 2/25/00), 755 So.2d 206, the Louisiana Supreme Court was called upon to determine whether to apply strict compliance or substantial compliance to the absentee voting laws. Primary to the court's inquiry was ensuring and maintaining the sanctity of the ballot and the integrity of the election, and protecting against the needless disenfranchisement of electors. The court concluded:
 A review of the jurisprudence makes clear that almost without exception this Court has never required strict compliance with our election laws. Both interpretations have their inherent strengths and weaknesses. The weaknesses in strict compliance, however, are too unforgiving, attendant with harsh consequences. More often than not, electors would be unreasonably disenfranchised necessitating setting aside elections more frequently for the slightest good-faith error. The same objectives can be accomplished with substantial compliance which means actual compliance with respect to the provisions essential to the reasonable objectives of the absentee voting law. After having fully weighed both, we conclude that, in the absence of legislative direction to the contrary, Louisiana's absentee voting law does not require strict compliance. We find substantial compliance a more just and reasonable approach in resolving the problems posed by irregularities in absentee voting.
Id. at 218.
Thus, in response to your question whether an election can be held on precincts which have been changed in non-compliance with the law of the Election Code, it is our opinion that local and state election officials have a duty to conduct such an election, unless enjoined by a court of competent jurisdiction, as the question of compliance with the law ultimately remains a judicial determination.
If you or any other election official has knowledge of a defect or irregularity by the local governing authority, you certainly have a duty to inform them of same. Thereafter, it is the responsibility of the local governing authority to correct the defect or illegality, as we stated earlier either by court action or by waiting until authorized by law to do so, and it is the local governing authority who runs the risk of having the election enjoined or declared null and void, as the most commonly used direct remedies for achieving relief from invalid legislation are declaratory judgments and injunctions against enforcement. The question before the court will certainly include whether the law has been substantially complied with and whether any substantial rights have been jeopardized. "[A]s certain provisions of the general election law, are mandatory; others are directory. A violation of the former is fatal to the election, but a nonperformance of merely directory provisions does not have a nullifying effect unless their neglect defeats, or renders doubtful, the ascertainment of the will of the voters participating in the election." Heine v. Jefferson Davis Parish Police Jury, 135 So. 667 (La. 1931).
 Provisions of statues governing the conduct of elections are mandatory when their purpose is to secure a complete and enlightened vote or prevent fraud and where failure to comply may influence the outcome of the election. However, a directory construction is applied to provisions where inconsequential deviations will not affect the result of the election. This also applies to provision where deviation secures timely and orderly conduct of elections. In deciding whether an election should be invalidated, courts may determine whether the results of the election were actually affected by failure to follow provisions. If necessary, provisions will be held directory in order not to thwart the will of the voters as expressed at an election, but the same kind of provisions may be mandatory when an individual is required to do acts to secure rights under it.
Sutherland Stat Const § 57.21 Election Laws. (4th Ed).
It is our opinion that not conducting such an election would substantially jeopardize the citizens' fundamental right to vote, which when balanced with the nature of the election laws at issue and the substantial compliance with same, seem to weigh in favor of conducting the election, which ascertains the will of the people.
 Question 3: If a local government agency does not comply with the law concerning adoption of precincts and does not obtain a court order validating adopted precincts or allowing the police jury or parish council to adopt altered and conforming precincts, may an election be held on such invalid precincts? Does such court order have to be precleared by the United States Department of Justice, Voting Rights Section prior to holding the election? If no court order is obtained, when may the election be held?
Our opinion as to your second question above, answers in part, this question as well. We do not believe the court order, if obtained, is required to be precleared by the U.S. Department of Justice, but the actual voting change, i.e. the ordinance, is required to be precleared before enforcement. Again, it is our opinion that the election in question should proceed as scheduled by law, unless and until, the election officials are enjoined from conducting the election.
 Question 4: Is Attorney General Opinion No. 94-21 binding as to the validity of school board reapportionment plans that do not comply with the statutorily required number of split precincts per district? May the Commissioner of Elections and Secretary of State rely on such opinion in determining whether an election should be held for impacted school board members?
In Attorney General Opinion No. 94-21, we opined that if a school board reapportionment plan is adopted in contravention to LSA-R.S. 17:71.3
(E)(1) and (2), then it is null and void. Thus, that which is invalid can certainly be attacked in law. "The determination of whether an action or proposed action is allowed under the law, or whether it is ultra vires is a function of the judicial branch." Grice v. Mayor and Council of Morgan City, 164 So.2d 370 (La.App. 1 Cir. 1964). Thus, it is our opinion that since it is a function of the judicial branch to actually declare an action in violation of the law, namely R.S. 17:71.3, the Commissioner of Elections and Secretary of State are required to perform their duty in conducting the election unless and until enjoined from doing so by a court of competent jurisdiction. Additionally, it has been questioned whether R.S. 17:71.3 applies to city school boards. Our reading of the law, which begins, "Each of the parish and city school boards shall . . ." is that the law does in fact apply to city school boards, as well as parish school boards.
Again, the election official's knowledge of a violation of R.S. 17:71.3
should be reported to the local governing authority for responsible action, as they are the ones risking the enjoining of the election and/or the declaration of invalidity of their ordinance. "[I]t has long been established in our jurisprudence that a writ of injunction is available and will be issued against a legislative body which has taken, or is threatening [sic] to take, action which is ultra vires. Connell v. Commission Council of City of Baton Rouge, 153 La. 788, 96 So. 657. Id. Grice, 164 So.2d at 375, quoted the language from Bardwell v. Parish Council of Parish of East Baton Rouge, 216 La. 537, 44 So.2d 107 at 109, 19 A.L.R.2d 514:
 In determining whether the plea of prematurity or lack of equity jurisdiction is well taken, two established principles must be considered. They are the general rule that equity will not interfere with a municipal body in the exercise of powers of a legislative character (numerous citations omitted).
 (A)nd the doctrine that an injunction will not issue to prevent the holding of an election (numerous citations omitted.)
 The above stated rules are not without exception. If the threatened action of a municipal council is in direct violation of a prohibitory law, equity will enjoin, even though no irreparable injury is shown, see Connell v. Commission Council (supra) * * * but this is the only instance that judicial intervention has been permitted in this State. See Durrett Hardware Furniture Co. v. City of Monroe, supra (199 La. 329, 5 So.2d 911, 140 A.L.R. 433). And, in cases involving the calling and holding of an election under certain conditions, a court of equity will restrain those ordering the election where the preliminary conditions necessary for the election call have not been fulfilled and the municipal body has either called or is threatening to call the election. See McQuillin on `Municipal Corporations' (3rd Ed.) Vol. V, Section 16.68 and cases cited in support of the text.' (Emphasis added).
In sum, a factual determination of whether or not a local jurisdiction violated the provisions of R.S. 17:71.3, such as to render the action null and void in accordance with the law, is a judicial determination.
Trusting this opinion to have sufficiently addressed your questions, we remain
Yours very truly
 RICHARD P. IEYOUB ATTORNEY GENERAL ___________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb Enclosure
Cc: Hon. W. Fox McKeithen LA School Board Association Hon. John J. Hainkel, Jr., President of the Senate Hon. Charlie DeWitt, Speaker of the House Mike Baer, Secretary of the Senate A.W. Speer, Clerk of the House Registrar of Voters Association Clerks of Court Association LA Parish Police Jury Association LA Municipal Association