Dear Mr. Haney:
You have requested an opinion from this Office regarding the ownership status of certain school board property in Iberia Parish. Specifically, you provide the following facts:
The Iberia Parish School Board ("the Board") acquired property, upon which is located one school, by a sale in 1926. The 1926 sale documents, which you have provided for our review, contain reversionary language that states that:
 It is agreed and distinctly understood that the said property purchased by said Iberia Parish School Board shall be used for the purpose of erecting and maintaining a colored School only; and should at any time it be abandoned for such purposes, that then and in that event the said tract of land without improvements shall revert back to Vendor upon Vendor paying to the said Iberia Parish School Board, the sum of $800.00 the purchase price herein, within one year after the date of abandonment for school purposes.[1]
The Canal Street Elementary School was erected on the property. The subject school was integrated in 1969.[2] In addition, according to information provided by your office, the school ceased being used for school purposes on February 6, 2008, due to the expansion of another school in the area. The original Vendor has made demand for the property pursuant to the above-quoted reversionary clause. However, in light of the triggering conditions of the reversionary clause, *Page 2 
you have the following questions regarding the Board's rights and duties with respect to the land:
 1. Is the Board obligated to return the property?
 2. If the answer to question 1 is "yes", can the Board return it without improvements upon receipt of $800.00 cash, as stated in the deed, or must it have the appraised value?
 3. To avoid the cost of demolitions (estimated to be approximately $50,000) can the Board legally offer to return the property with the improvements (the old school building) for the appraised value of the land without improvements?
For the reasons set forth below, it is the opinion of this Office that the Board is not under any obligation to return the subject property. Because we are of the opinion that the Board is the owner of the property and that the reversionary language is not actionable or enforceable, we need not address questions two and three, above.
Is the Board obligated to return the property?
The implications and effects of reversionary clauses in property transfers was recently succinctly addressed by the Louisiana Fifth Circuit in the matter of City of Harahan v. State of Louisiana, 08-106 (La.App. 5 Cir. 5/27/08), 986 So.2d 755. In this case, the court held that once the terms of a reversionary clause ceased to be met, the clause is activated and the property at issue was to return to the original owner. Thus, as a general principle, the language of a reversionary clause in a property transfer, if clear, will result in the return of the property if the clause is triggered.
As an initial matter, we find La.C.C. Art. 478 of particular import to this question. That article provides, in pertinent part (emphasis added), that:
 The right of ownership may be subject to a resolutory condition, and it may be burdened with a real right in favor of another person as allowed by law.
Because we are of the opinion that the reversionary clause in the 1926 deed is properly classified as a resolutory condition, [3] we believe that La.C.C. Art. 478 is *Page 3 
relevant to this situation. That law requires that the resolutory condition be one that is "allowed by law." As noted above, because school segregation is no longer legal in the United States, the resolutory condition in the 1926 deed would not be a condition that is allowed by law. However, because the condition was allowed by law at the time that it was executed (1926), we are doubtful that the requirements of La.C.C. Art. 478 can be used to retroactively strip this provision from the deed.
The courts of this State have looked disfavorably upon conditions in the acquisition of property by one elected body that will bind subsequent bodies as to the use of the property. See e.g., Anderson v. Thomas,117 So. 573 (La. 1928); Landry v. Council of East Baton Rouge Parish,220 So.2d 795 (La.App. 1 Cir. 1969). Thus, as an initial matter, the resolutory condition contained in the deed that you have provided to this Office is suspect in that it would bind the current Board based upon the morals and judgment of the Board in 1926. However, because the conditions complained of by the courts in the above-cited cases were added by the purchasers (the public entities) and not the sellers, the holdings of those courts that such conditions are not binding on future uses of the property are not determinative of the questions that you raise.
The next obvious question in this matter is: Can the above-quoted clause be stricken from the deed? In a recent opinion, Judge Lemelle of the Eastern District of Louisiana wrote the following concerning whether particular provision of a contract could be stricken due to their violations of public policy:
 The Louisiana Supreme Court has held that the dissolution of a contractual provision because it goes against public policy does not necessarily dissolve the entire contract. The court stated, "It is not necessary that the entire agreement containing the stipulation against public order or policy be declared null." Morse v. J. Ray McDermott Co., Inc., 344 So.2d 1353, 1358 (La. 1976). See also Henderson Implement Co., Inc. v. Langley, 707 So.2d 482
(La.App. 3rd Cir. 1998) (lt is not necessary that the entire agreement containing a provision against public policy be declared null and void; courts are free to recognize, by interpretation of will of the parties, that a provision inserted the in the agreement is only an *Page 4 
accessory clause to which the agreement was not subject for its existence, and delete the offending provision while enforcing the remainder of the agreement); Wilson Warehouse Company of Texas Inc. v. Maryland Casualty Co., 269 So.2d 562 (La.App. 1st Cir. 1972) (In order to avoid inequities, courts will sever the illegal and unenforceable provisions of the contract from the remainder of the contract rather than declare the entire contract void.); Starke Taylor Sons, Inc., v. Riverside Plantation, 301 So.2d 676, 680 (La.App. 3rd Cir. 1974) (If the enforceable provision of a contract can be severed from the unenforceable provisions, courts should, in order to avoid inequities, sever the enforceable from the unenforceable portion rather than declare the entire contract void).
Rathborne Land Co., LLC v. Ascent Energy, Inc., 2006 WL 2726367, 3
(E.D.La. 2006). Thus, it is clear that the Louisiana courts have recognized the need to sever offending portions from contracts from time to time in the greater interest of letting those contracts stand.[4]
The line of cases cited in Rathborne would seem to suggest that the segregation clause of the Canal Street Elementary School deed is severable from the remaining document, as it would now be illegal to enforce.[5] However, because the cases cited in the Rathborne opinion rely on "the will of the parties" to determine severability, we believe that severance of the offending language herein raises substantial fact questions regarding the importance of the condition that are not proper for this Office to address.[6] That *Page 5 
said, the prominence of the condition in the deed raises the substantial possibility that the segregatory nature of the school was a major cause for the sale.[7] Although such a fact-laden question would properly be a matter for judicial determination, for the reasons set forth below, we do not believe that such questions need to be answered.
Because the questions that you ask relate to the cause of the contract (the 1926 deed), a consideration of the enforceability of an illegal cause is warranted. In this regard, La.C.C. Art. 1968 states that,
 [t]he cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy.
Because the subject cause in this matter is both illegal and in violation of public policy, we have no qualms about labeling it unenforceable. In addition, unlike the "as allowed by law" provision of La.C.C. Art. 478, the unenforceability language of La.C.C. Art. 1968 is triggered at the time when the cause is attempted to be enforced, not at the time when the contract is entered into. Thus, there would be no problem of the retroactive impairment of contracts when a violation of the law and of public policy would occur by now failing to enforce the segregation requirement in the 1926 deed, as, at the time of its enforcement (now), it is a violation of the law and public policy.[8]
Nonetheless, if the "obligation" is the entire sale (the 1926 deed), we believe that this option would obtain the same result as in the Evans
cases: the failure of the cause would result in the failure of the contract. On the other hand, if, as we here opine, the "obligation" is merely the obligation to give effect to the resolutory condition, then the failure of the cause would not result in the failure of the contract, but rather just severing of the offending clause. Nonetheless, although we are unable to definitively opine that the Canal Street Elementary School property can remain the property of the Board because of the unenforceability of the segregation clause, for the reasons discussed below, we are of the opinion that such a determination is unnecessary, as the property appears to have vested in the Board's ownership for other reasons that rest on a clearer legal basis. *Page 6 
It is the opinion of this Office that the basis for the Board's full ownership of the Canal Street Elementary School property, with no obligation to return the property for the failure to keep the school segregated, lies in the Louisiana law of prescription. When Canal Street Elementary School was integrated in 1969, this action was, while required by law, a clear and open breach of the 1926 sale contract.
The prescriptive period for bringing a breach of contract claim in Louisiana is ten years. La.C.C. Art. 3499; Babkow v. Morris Bart,P.L.C., 1998-0256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423. Thus, an action against the Board based upon its legally required breach of contract prescribed in 1979, some 30 years ago.
In addition to the unenforceability of the reversionary clause for the reasons discussed above, there is yet another reason that the Canal Street Elementary School property remains in the ownership of the Board. There is a charge to the original owner of the Canal Street Elementary School property in the reversionary clause that requires it to take some action to avail itself of the terms of the reversionary clause. This language is as follows:
 . . .that then and in that event the said tract of land without improvements shall revert back to Vendor upon Vendor paying to the said Iberia Parish School Board, the sum of $800.00 the purchase price herein, within one year after the date of abandonment for school purposes.[9]
This sub-clause of the reversionary clause requires the original owner to tender the $800.00 to the Board "within one year after the date of abandonment [of the property] for school purposes"[10] in order to trigger the reversion. Thus, in this situation, it is the opinion of this Office that the reversionary clause was not automatically triggered at either the integration of the school or the cessation of use of the property for school purposes. Rather, it has not been triggered at all because the $800.00 has never been tendered. Because more than one year has passed since the time that the property ceased to be used for school purposes, the original owner no longer has an option to tender the funds to trigger the reversion. Thus, it is the opinion of this Office that for the further reason that it is too late to trigger the reversionary clause as to the Canal Street Elementary School property, the said property remains in the full ownership of the Board.
Accordingly, in answer to your first question, it is the opinion of this Office that, although the Board breached the segregation terms of the deed, that clause is *Page 7 
now inoperable as a means to rescind the sale, as all actions that might be brought for said breach have prescribed[11] and as the reversionary clause was never triggered. Therefore, the Board does not have an enforceable duty to return the Canal Street Elementary School property for its failure to adhere to the segregation requirement. The Board now owns that property without any strings attached.
If the answer to question 1 is "yes", can the Board return it withoutimprovements upon receipt of $800.00 cash, as stated in the deed, ormust it have the appraised value?
Your second question is rendered moot by the answer to the first question and is thus considered no further.
To avoid the cost of demolitions (estimated to be approximately$50,000) can the Board legally offer to return the property with theimprovements (the old school building) for the appraised value of theland without improvements?
The answer to your third question is moot based upon the answer to your first question.
Is there an "offer back" provision that the Board can use to sell theproperty back to the original owners?
During telephone conversations subsequent to your opinion request, you inquired whether the Board could offer the subject property back to the original owners in the event that the Board was the owner of the property. Because we have determined that the Board is the owner of the subject property, we address your question regarding whether, under the Public Bid Law, the Board can offer the property back to the original owners before putting it up for bid (assuming that the Board wants to divest itself of the property).
To answer this question, we refer you to La.R.S. 41:1338. Generally, that law requires that property no longer needed by the State (in this case, including school boards) be offered first to the original vendor of the property before the property is offered for sale to other third parties. However, La.R.S. 41:1338(C) provides that this mandatory "offer back" provision does not apply to school board owned property. Thus, it is our opinion that, while permissible, there is no legal requirement that the Board offer the subject property back to the original *Page 8 
vendors. Further, should the Board decide to offer the subject property back to the original vendor, the price must be one of fair market value. La.R.S. 41:1338. The procedures for such sales are provided, in detail, in La.R.S. 41:1338, and we refer you to them should the Board decide to divest itself of the subject property via this mechanism.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:__________________________ RYAN M. SEIDEMANN Assistant Attorney General
 JDC/RMS/tp
[1] Act of Sale dated June 15, 1926, COB 107/202/40931, Iberia Parish, Louisiana. Copy on file with the Louisiana Department of Justice.
[2] It is important to note that this integration was required by law.Brown v. Board of Ed. of Topeka, Shawnee County, Kan., 347 U.S. 483
(1954).
[3] It is important to note the definition of resolutory conditions and how they work in Louisiana. That definition comes from La.C.C. Art. 1767, which states (emphasis added):
 A conditional obligation is one dependent on an uncertain event.
 If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
 If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
In this situation, because the obligation was immediately enforceable (i.e., the sale) and the failure of the sale is conditioned on the integration of the school, we are of the opinion that the segregation language in the deed is clearly a resolutory condition.
[4] During the course of our research, we have not been able to identify any cases that directly address the questions that you present. However, two United States Supreme Court cases were identified that do merit some attention: Evans v. Abney, 396 U.S. 435 (1969) and Evans v.Newton, 382 U.S. 296 (1966). Both of these cases stem from a dispute in Georgia regarding a restrictive covenant in a donation mortis causa of property to be used as a segregated park that is similar to the reversionary clause in the Canal Street Elementary School deed. In these cases, the Court found that, in light of the Fourteenth Amendment restrictions against segregation, it would be unconstitutional for the City of Macon to accept the donation of the property for a park and to then enforce the segregation requirements of the donor. However, the court also held that the covenant expressed by the donor was a substantial basis for the donation and that, although it would be illegal to give it effect today, it was not severable from the act of donation under Georgia law. Thus, the City's only option was to decline the donation. Although these cases dealt with the Georgia law of successions, they may be indicative of a tendency for the United States Supreme Court to disagree with the Rathborne-type holdings of the Louisiana courts. It is important to note that, although both of theEvans cases can be said to have been rendered during the Civil Rights Movement of the 1960s, they are subsequent to the overruling of thePlessy v. Fergusson, 163 U.S. 537 (1896), separate but equal rule (see,Brown v. Board of Ed. of Topeka, Shawnee County, Kan., 347 U.S. 483
(1954)). Thus, these cases appear to present the most recent pronouncement of the U.S. Supreme Court on such matters in a post-Plessy environment.
[5] We believe that the fact that the segregation clause is illegal rather than just a violation of public policy as are the offending clauses in the cases cited in Rathborne makes the Canal Street Elementary School situation an even stronger candidate for severance.
[6] La.R.S. 49:251(A) states that "the attorney general shall give his opinion in writing upon all questions of law" to elected and appointed state officers as required by statute. It is the policy ofthis office that we will not seek out the facts or infer the questions from the opinion request. The Attorney General will not furnish opinions on questions of fact; nor will the Attorney General issue an opinion on questions scheduled for determination by the courts, or where the prospect of litigation appears imminent. See, La. Atty. Gen. Op. No. 07-0111.
[7] However, it is unclear that this major cause was the only or primary cause. This is an important distinction, as the failure of a primary cause would result in the failure of the contract. Saul Litvinoff, Still Another Look at Cause, 48 LA. L.REV. 3, 18 (1987) ("A cause may exist at the inception of an obligation and then fail. When such is the case the obligation ceases to exist when its cause fails.").
[8] See also, La.C.C. Art. 1813.
[9] Act of Sale dated June 15, 1926, COB 107/202/40931, Iberia Parish, Louisiana (emphasis added). Copy on file with the Louisiana Department of Justice.
[10] Id.
[11] Although we have spent a considerable amount of time examining the cause for the sale in this matter, and have noted that a failure of cause would mean a failure of the contract (deed), we also are of the opinion that the failure of the vendor or his heirs or assigns to bring an action for breach of contract based upon the failure of cause is also subject to the prescriptive periods outlined above, all of which have lapsed.